(Nos. 23348, 23190.—

Clara A. Crozier vs. The Freeman Coal Mining Company.—(James W. McElvain et al. Appellees, vs. Maclay Hoyne, Appellant.)

*Opinion filed April 24, 1936—Rehearing denied June 3, 1936.*

Shaw, J., dissenting.

Winston, Strawn & Shaw, and Maclay Hoyne, *pro se,* (John D. Black, C. C. Craig, and Angus Roy Shannon, of counsel,) for appellant.

John J. Healy, and John H. S. Lee, for appellees James W. McElvain *et al.;* Kemper K. Knapp, for appellees The United States Steel Corporation *et al.;* Harlan L. Hackbert, for appellee The United States Fuel Company.

Mr. Justice Wilson delivered the opinion of the court:

A decree entered by the superior court of Cook county on March 26, 1935, among other things, sustained two injunctions issued in January, 1933, restraining Maclay Hoyne from prosecuting his claim for the recovery of an attorney's fee in two suits, one in the Supreme Court of New York initiated by Frank Crozier, who made Hoyne a defendant; and the other, a suit which he, Hoyne, filed in the United States District Court of New Jersey, allowed him $84,639.53 in full payment of his fee out of a fund held by the United States Steel Corporation and Gordon L. Edwards, its nominee, allowed the sum of $170,000 to James W. McElvain, J. William McElvain and Thornton H. McElvain, and denied the claims of other claimants, including the United States Fuel Company. From that decree Hoyne prosecutes this appeal. The McElvains and

the United States Fuel Company prosecute separate cross-appeals.

A consideration of the issues presented for decision requires a review of previous litigation between some of the parties named, and also certain other parties.

December 22, 1922, Clara A. Crozier filed a bill in equity in the superior court of Cook county against the Freeman Coal Mining Company, John J. Sherlock, individually and as trustee, the Burton Coal Company and Fred A. Burton. The bill was amended on November 28, 1923, and the McElvain-Hoy Company, James W. McElvain, J. William McElvain, Thornton H. McElvain and Carley H. Hoy were added as parties defendant. On the same day, namely, November 28, 1923, James W. McElvain, and his sons, J. William and Thornton H. McElvain, filed a cross-bill against the Freeman Coal Mining Company, the Burton Coal Company, Fred A. Burton, John J. Sherlock, individually and as trustee, and Carley H. Hoy. Various answers, replications, amended bills and amended cross-bills were subsequently filed by the respective parties.

The original complainant, Mrs. Crozier, by her pleadings sought, among other relief, to obtain a decree setting aside a transfer to Burton by herself in January, 1922, of $50,000 of bonds executed by the Freeman Company in February, 1921, payable to bearer, with seven per cent interest, payable semi-annually, secured by a trust deed conveying to Sherlock, as trustee, certain leasehold premises in Williamson county, and also the transfer of a promissory note for $50,000 executed by the Freeman Company on November 1, 1921, payable to the order of Mrs. Crozier thirty days after date, with seven per cent interest per annum, and guaranteed by McElvain and Hoy, officers and stockholders of the Freeman Company, and further secured by a collateral promissory note of the McElvain-Hoy Company dated November 1, 1921, for $70,000, payable to the Freeman Company six months after date, which recited

the delivery to the Freeman Company of accounts receivable as collateral of the value of $50,000, and was also guaranteed in writing by McElvain and Hoy and endorsed in blank by the Freeman Company. The bill charged that the transfer of the bonds and notes was obtained by Burton and Sherlock by fraud, misrepresentation and duress.

The object of the cross-bill was to set aside certain transactions and transfers of stock by the McElvains in January, 1922, and agreements executed thereafter ratifying and confirming such transactions and transfers, and certain other transactions, to require the return of shares of stock and an accounting by the defendants to the cross-bill. By their cross-bill the McElvains alleged a conspiracy of Burton, Hoy and Sherlock to obtain from them by fraud, blackmail, threats and false representations, the mine, assets, business and capital stock of the Freeman Company and to release the Burton Company from a large debt which it owed to the Freeman Company, and set out in detail threats of criminal prosecution and immediate arrest and false representations used to accomplish these purposes, and the result that they, the McElvains, were coerced into delivering to Burton their shares of stock in the Freeman Company and turning over to him the management and control of the company, and that, by obtaining such control of the Freeman Company, Burton fraudulently prevented it from asserting its claim against the Burton Company for a large amount of money.

The important question before this court revolves around a judgment recovered in the United States Court of Claims by the Burton Company against the United States for coal sold during the war. A portion of the proceeds of that judgment is now in the hands of the United States Steel Corporation in the State of New York. Out of this fund Hoyne claims a fee equal to one-third of the amount of the judgment actually paid to the steel corporation in satisfaction of the judgment. It becomes important to set out in

concise form the nature of this claim and the fund involved, inasmuch as it enters into the subsequent acts and pleadings of the parties hereinafter set forth in this opinion.

From the facts it must be borne in mind that this court in its decision in *Crozier* v. *Freeman Coal Mining Co.* (No. 16832, not published,) clearly distinguished between the obligation of Burton individually, and the Burton Company, to the complainant and cross-complainants in that suit. From the facts it appears that on September 10, 1920, the Burton Company entered into a contract with the United States to sell to it 150,000 tons of coal, including 60,000 tons of Freeman Company coal. Frank Crozier, an attorney and husband of the complainant, acted as attorney for both the Freeman Company and the Burton Company in the preparation of the contract. The Burton Company delivered a part of the coal sold, but before complete delivery the United States refused to accept or pay for the balance. For this breach the Burton Company recovered judgment against the United States in the Court of Claims for $445,528.40.

A decree was entered on April 3, 1925, by which certain issues were decided in favor of Mrs. Crozier and the McElvains upon their bill and cross-bill, respectively. In particular, it was decreed that there was then due to the Freeman Company $219,762 of the judgment mentioned, and the Burton Company was directed to assign to the receiver of the Freeman Company appointed by the trial court the sum named. The Freeman Company, the Burton Company, Burton, Sherlock, individually and as trustee, and Hoy, appealed to this court. On the day the decree was entered the parties last named presented their appeal bond in the sum of $750,000, which was approved by the court and filed. The appeal bond provided, among other things, that if the appellants "shall duly prosecute their said appeal with effect, and moreover, pay the several amounts in said decree provided * * * and * * *

shall do and perform the several things in said decree provided to be done * * * in case the said decree shall be affirmed in said Supreme Court, then the above obligation to be void, otherwise to remain in full force and virtue."

The opinion of this court in the original proceeding, (*Crozier* v. *Freeman Coal Mining Co. supra*,) was filed February 20, 1929. A rehearing was, in the language of the court, "improvidently allowed," and upon the filing of an additional opinion on October 19, 1929, the opinion of February 20 was confirmed. The decree of the superior court was reversed and the cause was remanded to that court, with directions to enter a decree setting aside the transfer of the bonds, the $50,000 note and the $70,000 collateral note by Mrs. Crozier to Burton and her release to him in January, 1922; directing the return of the notes and release to Mrs. Crozier; declaring her to be the legal owner of the bonds; directing that Burton and the Burton Company deliver them to the clerk of the court; decreeing that the Freeman Company pay to Mrs. Crozier the amount due on them, principal and interest, to the date of the decree, as provided on the face of the bonds and by the interest coupons attached, and that execution issue therefor; also setting aside the transfers of James W., J. William and Thornton McElvain to Burton of their shares of stock in the Freeman Company and in the McElvain-Hoy Company, and all the contracts, releases and receipts of the McElvains, or either of them, concerning the transfer of the capital stock of the Freeman Company and the McElvain-Hoy Company to Burton or purporting to confirm or ratify the transactions under which the control of the Freeman Company was turned over to Burton; setting aside, also, the contract of September 28, 1922, between McElvain and Hoy purporting to transfer to Hoy stock in the McElvain-Hoy Company; decreeing that James W. McElvain was the owner of 1186.14 shares of the capital stock of the Freeman Company, J. William

McElvain of 265.97 shares, Thornton McElvain of 250 shares and the Freeman Company of 531.93 shares, and that Burton and the Burton Company transfer and deliver all of said shares to James W., J. William and Thornton McElvain and the Freeman Company; that the three McElvains were each the owner of one-fourth of the stock of the McElvain-Hoy Company, and that Burton and the Burton Company, the holders of said shares, transfer and deliver them to the three McElvains; that Burton and the Burton Company file an account on behalf of the Freeman Company before the master to whom the cause shall be referred, of all coal mined by the Freeman Company since January 14, 1922, of all coal sold since that date, and also an itemized account of all sums paid by or on behalf of the Freeman Company for commissions, bonuses, dividends, salaries, attorneys' fees, rents, royalties and running expenses of the Freeman Company while that company was under the dominion and control of Burton, together with the time of the payment of each sum and the person to whom paid, and that Burton and the Burton Company shall also file with the master a copy of all contracts, leases or mortgages executed by the Freeman Company since January 14, 1922; that Burton and the Burton Company, their agents and attorneys, be restrained from paying, receiving or taking, as directors or officers of the Freeman Company or as directors or officers of the McElvain-Hoy Company, any money belonging to said companies by way of commissions, bonuses, dividends, salaries, attorneys' fees or otherwise, and from selling, mortgaging or creating any liens upon the mines, plant, equipment or machinery of the Freeman Company, and from destroying or injuring or in any way impairing the value of the mines, plant, machinery and equipment of such company, and from in anywise diminishing its value or use and from permitting waste to be committed upon said property, and referring the cause to a master to take an account in conformity with the opin-

ion, and that the court take such further proceedings as may be in conformity with the opinion rendered.

The appellees Clara Crozier and the McElvains presented a motion to one of the judges of this court in vacation to change and modify the finding in the mandate which declared that the decree of the trial court was reversed and the cause remanded, with directions, and to enter an order reciting that the decree was affirmed in part and reversed in part and the cause remanded in accordance with directions. An order was entered staying proceedings under the mandate until the further order of the court. At the April term, 1929, appellees filed a "petition and motion of appellees for rehearing and change of mandate," by which they petitioned the court "to grant a rehearing in this cause to the extent of changing and modifying the final order and mandate therein." The appellees asserted that they were merely asking the court to change the order previously entered and the mandate heretofore issued so that they should correctly set forth the findings of the court as shown by the opinion. In the additional opinion rendered at the October term, 1929, this court said: "Counsel for the appellees contend that the bill sets forth several independent and distinct causes of action; that this is also true of the cross-bill; and that the opinion of the court expressly affirmed some of the decisions of the superior court upon some of these independent causes of action and reversed its decree upon other causes of action. The right of the appellees, the McElvains, to a return of the capital stock of the Freeman Coal Mining Company taken from them by fraud, it is argued, was an independent and distinct cause of action, decided in their favor by the decree of the chancellor and this decree was affirmed. The right of the Freeman Coal Mining Company to an accounting by Burton and the Burton Company, it is further argued, is entirely independent of and distinct from the McElvains' right to recover their stock and the decree finding in favor

of the McElvains as to such right and fixing the basis of the accounting, it is contended, was not reversed but was affirmed. So, it is contended, that the alleged cause of action in favor of the Freeman Company against the Burton Company for a share in the damages collected by the Burton Company from the Federal government is an entirely independent and separate cause of action in which the decree was in favor of the McElvains but was reversed. Mrs. Crozier's right to recover the bonds and notes taken from her by Burton is claimed to be an independent, separate cause of action, the decree upon which was affirmed and it is contended that the decree in favor of Mrs. Crozier against the Freeman Company on the $50,000 note and on the bonds was also affirmed in all respects except in regard to the interest. The decrees against Burton and the Burton Company for the amount of the bonds and note of the Freeman Company and against Sherlock for the sinking fund which he did not collect, it is also argued, were independent separate causes of action and they were reversed." In disposing of these contentions the court said: "The motion to change and modify the mandate cannot be allowed. The mandate which this court issues upon the remandment of a cause to the court from whose judgment or decree an appeal has been taken is a transcript of the final order or judgment of this court. It is not claimed that the mandate issued in this case was not a correct transcript of the judgment shown upon the record of the court. There is no basis for the change or modification of the mandate." Likewise, the petition for another rehearing was denied. In conclusion the court observed: "Affidavits were presented in connection with the petition for rehearing to show that if the judgment of this court at the February term is to be regarded as a general reversal, and if its effect is to deprive the appellees of the protection of the appeal bond, then the appellees will be unable to enforce any substantial part of the decree because the Freeman

Coal Mining Company is very heavily indebted and neither Burton nor the Burton Company is financially able to respond to any decree which may be entered against them. These affidavits we cannot consider. We can look only at the certified transcript of the record of the superior court. (*Burton* v. *Perry*, 146 Ill. 71; *Newlin* v. *Snyder*, 78 id. 528.) We do not in this opinion construe the judgment nor pass upon its effect on the appeal bond."

The mandate issued on October 19, 1929, reads in part: "That in the record and proceeding aforesaid and in the rendition of the decree aforesaid there is manifest error; therefore it is considered by the court that for that error and others in the record and proceedings aforesaid the decree of the superior court of Cook county in this behalf rendered, be reversed, annulled, set aside and wholly for nothing esteemed. * * * And it is further considered by the court that the said appellants recover of and from the said appellees their costs by them in this behalf expended to be taxed, and that they have execution therefor."

Maclay Hoyne was not a party to the foregoing proceeding. He, together with another attorney, represented Burton and the Burton Coal Company prior to the trial. Hoyne then withdrew and John R. Cochran was substituted for him, and, with Hoyne's former associate, conducted the trial and the appeal to this court. When the chancellor indicated the nature of the decree he contemplated entering, Hoyne consulted with an officer of the United States Steel Corporation with respect to making arrangements for the appeal bond. In a letter dated March 30, 1925, the Burton Coal Company and Burton agreed to indemnify the steel corporation for procuring a bond to be given by a surety company. This letter was on May 16, 1925, confirmed by an agreement which, among other things, assigned to the steel corporation all the securities involved in the original proceeding, together with certain securities belonging to Burton and the Burton Company,

and, in particular, the judgment rendered in favor of the Burton Company and against the United States by the Federal Court of Claims on February 2, 1925, for $445,528.40. The agreement provided that the collateral should be held by the nominee of the steel corporation. John R. Cochran was appointed trustee of collateral pending the appeal. Cochran later received the proceeds of the judgment, amounting to $481,756.57. He held the securities and the money until he resigned, on June 11, 1929, and was succeeded by Gordon L. Edwards, who took possession of the collateral. Edwards was in possession of the proceeds of the judgment recovered by the Burton Company when this court, on October 19, 1929, made final disposition of the case of *Crozier* v. *Freeman Coal Mining Co. supra.*

In December, 1929, the notes and bonds claimed by Mrs. Crozier were delivered to her. The stock of the Freeman Coal Mining Company and of the McElvain-Hoy Company claimed by the McElvains was also delivered to them. The proceeds of the judgment against the United States remained in Edwards' hands.

Negotiations for a settlement of all claims of Mrs. Crozier and the McElvains ensued during this time. Prior to August 7, 1930, an agreement was reached without Hoyne's knowledge or consent. The net result was a consent decree entered in the superior court on August 7, 1930, bearing the approval and endorsement of the solicitors for Mrs. Crozier, the McElvains, Burton, the Burton Coal Company, Sherlock and the Freeman Coal Mining Company, the filing of a second supplemental bill and cross-bill on the same day, and a written settlement contract between the McElvains, Mrs. Crozier and the steel corporation dated August 21, 1930. The parties to the original proceeding stipulated that the sum of $470,000 would be found due upon the accounting which the Supreme Court directed to be made conformably to the rule of damages set forth in its opinion. The contract of partial settlement between

the McElvains, Mrs. Crozier, the steel corporation, Burton and the Burton Company provided for the payment of $300,000 to the McElvains and Mrs. Crozier. This settlement was carried out, as a result of which the McElvains and Mrs. Crozier, or their representatives, have already received from the fund growing out of the judgment against the United States all moneys except those claimed by Hoyne for his professional services in obtaining the judgment. The settlement agreement also provided that if the McElvains and Mrs. Crozier would reduce the liability on the appeal bond from $750,000 to $470,000 and release the steel corporation and its subsidiary, the fuel company, from all claims except the reduced amount of such liability, it, the steel corporation, would hold the balance of $170,000 until the McElvains obtained (1) a release from Hoyne of his interest therein, or (2) a judicial determination in a court of competent jurisdiction binding upon him. Neither the steel corporation nor the United States Fuel Company, mentioned in the agreement, however, conceded that as against Hoyne the McElvains were entitled to the $170,000. It thus appears that $181,756.57, with interest, was left in the steel corporation's hands primarily for the protection of Hoyne's claim, together with interest thereon. He was not a party to the original suit in this State nor to the consent decree entered on August 7, 1930, and his rights are not affected thereby. The parties directly affected had a right so to stipulate as far as their own rights were concerned. Hoyne may not, therefore, attack the agreement or the consent decree to the extent that they relate to the $300,000. *Spring Lake Drainage District* v. *Stead,* 263 Ill. 247.

Mrs. Crozier and the three McElvains appear as cross-complainants in the second supplemental bill and cross-bill, filed August 7, 1930. They made the United States Fidelity and Guaranty Company, Maclay Hoyne, Gordon L. Edwards, the United States Steel Corporation, Burton, the

Burton Coal Company and the Freeman Coal Mining Company defendants. This was the first time that the four parties first named were made parties to the litigation. The relief sought by the second supplemental bill and cross-bill was a decree finding Burton, the Burton Coal Company and the United States Fidelity and Guaranty Company to be indebted on the appeal bond to Mrs. Crozier and the McElvains in the sum of $170,000; that the surety company be directed to immediately pay to them the balance due them on the bond, together with interest; that the decree provide that the steel corporation and Edwards hold $170,000 in their hands as trustees for them; that if the surety company shall not pay the sum decreed then Edwards be directed to pay them the sum of $170,000; that the decree declare that Hoyne has no right, title or interest in the money, and that an injunction issue restraining Hoyne from instituting suit against the steel corporation, Edwards or the United States Fuel Company. It was sought by this supplemental bill to construe the opinion of this court in the original proceeding as a partial affirmance of the decree of the superior court of April 3, 1925, despite the fact that this court refused to change its opinion and mandate in conformity with the request of the McElvains and Mrs. Crozier in that regard.

The steel corporation and its nominee, Edwards, trustee of collateral under the appeal bond, appear in the present phase of the litigation primarily as the holders of the balance of the proceeds of the judgment recovered by the Burton Company against the United States. The United States Fidelity and Guaranty Company is the surety upon the appeal bond. Hoyne is the attorney who successfully represented the Burton Company in the prosecution of its claim against the United States. Hoyne's contract of employment with his client originally was a parol agreement. Later it was evidenced by two letters of June 6, 1922. Hoyne's letter of that date expressed his understanding that

he was to receive for legal services one-third of the amount collected by the Burton Company on its claim against the United States government for a breach of contract pending in the Court of Claims: "You, however, are to pay all costs and expenses, including court costs, fees of commissioners for taking depositions, court reporting, hotel and railway expenses, and any other cash disbursements which may become necessary and which you approve." The answer of the Burton Company on the same day stated: "In view of your charges, I would prefer to have you make out a little agreement with me in regard to the Washington case and in that way we can avoid any possible misunderstanding." On March 27, 1922, the Burton Company authorized Hoyne to present and prosecute its claim against the United States and to collect and receipt for it. Thereafter, on September 27, 1922, a formal written agreement was executed by which Hoyne agreed to perform all legal services requisite to the prosecution of the claim, and the Burton Company agreed to pay him "a sum equal to $33\frac{1}{3}\%$ of the amount recovered and paid on said claim, after deducting the total amount of costs and expenses of prosecuting said claim and adding the amount of interest, costs and expenses recovered from the United States at the time of said payment." Suit was instituted in the Court of Claims on April 26, 1922, and on February 2, 1925, judgment for $445,528.40 was rendered in favor of the Burton Company and against the United States. On appeal, the Supreme Court of the United States on February 21, 1927, affirmed the judgment. (*United States* v. *Burton Coal Co.* 273 U. S. 337.) The judgment was paid in January, 1928, the amount delivered to Cochran, as trustee of collateral for the steel corporation, being $481,756.57. We note that the judgment of the Court of Claims was rendered prior to the entry of the decree of the superior court on April 3, 1925. During the period between the rendition of the

judgment in favor of the Burton Company and the entry of the decree of the superior court, the Burton Company on March 28, 1925, assigned to Hoyne a one-third interest in the judgment which the latter had been instrumental in obtaining, and also "interest thereon from the date of the filing of a transcript of said judgment in the treasury department of the United States."

By his answer to the second supplemental bill and cross-bill, filed on December 17, 1930, Hoyne claimed that the Supreme Court reversed, annulled and set aside the decree of the superior court of April 3, 1925; denied that any decree had been entered in the trial court pursuant to the opinion of this court, but averred that the decree of August 7, 1930, was a consent decree entered pursuant to an agreement between Mrs. Crozier, the McElvains, Burton, the Burton Company, the Freeman Company and the steel corporation; denied that the principals or surety were liable under the provisions of the appeal bond, and averred that by virtue of the order and opinion of this court said parties and all other persons were discharged and released from liability under the appeal bond; averred his employment by the Burton Company to prosecute its claim against the United States, his contract to be paid one-third of the amount recovered, the recovery and payment of the judgment, and the assignment to him of one-third of the judgment and interest thereon; averred further that for the sole purpose of indemnifying the steel corporation from any damages which it might incur by reason of procuring the surety company to execute, as surety, the appeal bond, Hoyne permitted the Burton Company to assign its entire judgment to the steel corporation; that the steel corporation knew of his interest in the judgment; that in consequence of this court's reversal of the decree of April 3, 1925, the appeal bond was discharged and the steel corporation released from any liability under its indemnity to the surety company, and that, since the rendition of this

court's opinion on October 19, 1929, he, Hoyne, had been entitled to one-third of the proceeds of the judgment. He specifically denied taking any property from the complainants or perpetrating any of the injuries alleged to have been incurred by them as the result of any plans charged to have been originated or carried out with his assistance.

On September 30, 1930, Frank Crozier, then a resident of California, brought suit against the steel corporation in New York, claiming the fund. Personal service was had upon the defendant. The steel corporation on October 2, 1930, notified the McElvains of the Crozier suit in New York and offered them an opportunity to participate in the defense of the action. Hoyne was made a party to this suit, and it appears that to protect his rights he has endeavored to prosecute his claim there. In April, 1931, Hoyne brought a suit in the United States District Court of New Jersey to recover the fund.

The second supplemental bill was amended on May 16, 1931. The United States Steel Corporation on June 1 entered its special appearance and filed a plea to the jurisdiction. On December 14, 1932, more than two years after the filing of the supplemental cross-bill, the steel corporation interposed an answer and filed its cross-bill. By the answer it denied that there was any liability on the appeal bond; denied that it agreed to pay $300,000 by virtue of any decree but averred that it did so pursuant to the agreement of August 21, 1930, and stated that it held $170,000 under the terms of that agreement; averred that Frank Crozier had instituted an action against it, the steel corporation, and Edwards, in the Supreme Court of New York, claiming $180,000, and also averred that on April 8, 1931, Hoyne brought a suit against it in the United States court in New Jersey to recover his one-third interest in the proceeds of the Burton Company judgment against the United States, and that both the New York and New Jersey suits were still pending.

The steel corporation made the McElvains, the Burton Company, Burton, the United States Fidelity and Guaranty Company, Edwards, the United States Fuel Company, Hoyne, the administrator of Frank Crozier, Clara Crozier, and the Foreman-State National Bank, defendants to its cross-bill. In it the steel corporation again set forth the payment of $300,000 to the McElvains and Mrs. Crozier, and alleged that the McElvains released and discharged it, Edwards, the fuel company and the surety company from all claims against the right claimed by the McElvains to the balance of $170,000 remaining with it. The cross-bill then disclosed that there were conflicting claims for all or part of this fund; (a) that it held this amount, together with $11,756.57 additional, and interest, to protect it against any liability on the agreement of May 16, 1925, and particularly because of its obtaining the appeal bond; (b) that the McElvains claimed the fund of $170,000 was held in trust for their benefit on the theory that this court affirmed the decree of the trial court; (c) that the McElvains also claimed that the surety company was indebted to them on the appeal bond and had brought two suits, one at law and one in equity, against the surety company; (d) that Hoyne claimed to have received an assignment from the Burton Company for part of the judgment; that the decree of the superior court was reversed by this court and that liability on the appeal bond had terminated, and that the steel corporation held a part of the funds in its hands in trust for his benefit, and that he, Hoyne, was prosecuting his suit in equity in the United States District Court of New Jersey against it, the steel corporation, and that he was also prosecuting his suit in the Supreme Court of New York to enforce his claim; (e) that the Foreman Bank claimed that Hoyne had assigned to it a portion of his claim; (f) that persons unknown to the steel corporation, but known to Hoyne, claimed to hold an assignment or assignments from him

to portions of the moneys; (*g*) that the surety company claimed an interest in the fund as indemnity against its liability, if any, upon the appeal bond; (*h*) that Frank Crozier in his lifetime claimed a one-third interest in the fund and commenced an action in New York thereon; that his administrator had been substituted as plaintiff; that Hoyne was a party to the New York proceeding and demanded judgment therein, and that the suit was still pending; (*i*) that Mrs. Crozier claimed an interest in part of the proceeds of the judgment; (*j*) that the fuel company claimed an interest under an assignment from the Burton Company; and (*k*) that the Burton Company and Burton claimed to be entitled to the return of all of the fund not disposed of under the terms of the agreement of August 21, 1930. The steel corporation accordingly asked the decision of the court upon the numerous asserted rights to the fund, and prayed for an injunction restraining the defendants to its cross-bill from prosecuting any suits at law or otherwise.

The interest of the United States Fuel Company, referred to in the preceding paragraph, a wholly-owned subsidiary of the steel corporation, in the fund in controversy, arises from the fact that on April 5, 1928, the Burton Company, being indebted to it for $315,235.37, executed and delivered to it an assignment of all right, title and interest in the sum of $481,756.57—the proceeds of the judgment which had been deposited with the steel corporation in January, 1928. The assignment was expressly made subject to the steel corporation's right to reimburse itself out of the fund, as provided by its agreement with Burton and the Burton Company of May 16, 1925, and the rights of Hoyne under the Burton Company's assignment to him dated March 28, 1925.

On December 20, 1932, Hoyne filed a motion to strike the cross-bill of the steel corporation and interposed general and special demurrers to the cross-bill. The demur-

rers charged that the matters alleged in the cross-bill were not germane to the original bill; that from the cross-bill it appeared that the $170,000 was delivered to it for the sole purpose of indemnifying it against any damages by reason of having procured the surety company to become surety upon the appeal bond; that the steel corporation by the agreement of August 21, 1930, was to pay out of the $170,000 an amount sufficient to satisfy any judgment in a suit in which it should be held liable to make any payments for liability arising out of its indemnification of the surety company, and that the steel corporation was now defendant to such a suit in New York which was being prosecuted, and hence that its prayer for injunction was without equity.

On December 24, 1932, the Burton Company answered the cross-bill of the steel corporation, claiming that under its agreement with Hoyne the latter was to receive one-third out of the net proceeds of the judgment after payment of costs and expenses, and that such costs amounted to $50,000, which the Burton Company asked to be paid to it.

On December 29, 1932, Hoyne filed a further and supplemental answer to the amended second supplemental bill and cross-bill of the McElvains. In particular, he averred that neither Mrs. Crozier, the McElvains nor the Freeman Coal Mining Company had, or has, any interest in the judgment recovered by the Burton Company against the United States, and that therefore the matter of ownership of the judgment was not germane to the original proceeding nor subject to the jurisdiction of the court in this cause; that Hoyne contested the jurisdiction of the New York court in the suit commenced by Crozier, but that it held it had jurisdiction over him and over the fund.

On January 12, 1933, Hoyne answered the cross-bill of the steel corporation. This answer averred that by the settlement agreement of August 21, 1930, it was agreed

that Burton and the Burton Company should deliver to John H. S. Lee, as escrowee, their certain promissory note for $100,000, to be held by Lee for the benefit of the McElvains and himself, it being the purpose of the parties that the note should become the property of the McElvains and Lee, as their interests might appear, unless they effected a settlement with Hoyne concerning the $170,000 in the hands of the steel corporation, or should by suit or otherwise receive this sum in addition to the $300,000 theretofore paid by the steel corporation; that the note was executed and delivered in escrow, and thereby the McElvains made a new agreement to receive the note in lieu of any claim they had to the $170,000, which new agreement was for the benefit of Hoyne, and which estopped them to claim any interest in the $170,000. He concluded his answer with an averment that this court in *Crozier* v. *Freeman Coal Mining Co. supra,* held that none of the complainants or cross-complainants had, or have, any interest in the judgment in favor of the Burton Company against the United States, and that the court, therefore, should not take jurisdiction of any claims in this cause.

The superior court on January 12, 1933, denied the motion of Hoyne to strike the cross-bill of the steel corporation and overruled his demurrer to the cross-bill. By the order entered on the day named, the court decreed that an injunction issue as sought by the steel corporation, directed to the McElvains and Hoyne, enjoining them from prosecuting any suit for $170,000 or from assigning or transferring any alleged claims until further order of the court; restraining the McElvains from prosecuting their other suits filed in Cook county; restraining Hoyne from seeking any affirmative relief against the steel corporation in the New York suit and from prosecuting the New Jersey suit, and reserving to the court the right to determine all questions as to whether Hoyne had sustained damages and as to whether the steel corporation was liable to him, Hoyne, therefor.

The following day, January 13, 1933, the McElvains filed an amended second supplemental cross-bill. It charges, among other things, that Hoyne originated and conceived the criminal conspiracy charged in the original bill and in the cross-bill, actively participated therein, and made various coercive threats which compelled the McElvains to act. It was further charged that the alleged conspiracy damaged the McElvains in excess of $500,000; that for the purpose of carrying out the conspiracy and enabling Burton and Hoyne to remain in control of the Freeman mine, Burton, with the approval of Hoyne, persuaded the steel corporation to induce the surety company to execute the appeal bond; that under the agreement between the Burton Company and the steel corporation, by which the former indemnified the latter, the steel corporation became a trustee for the McElvains for the judgment assigned to it for the purpose of indemnifying it from liability on the appeal bond; that they, the McElvains, have refused to enter their appearance in the action pending in New York on the ground that the court there has no jurisdiction to pass on the obligations of the surety company to them, and prayed that Hoyne be restrained from instituting or maintaining any suit against the steel corporation, the United States Fuel Company and Edwards to enforce payment of the $170,000.

On the day this amended second supplemental cross-bill was filed, an injunction order was entered enjoining Hoyne from prosecuting his claim for his interest in the Burton Company judgment in New York and in New Jersey. By this order the court reserved the right to decide and determine all questions as to whether Hoyne had sustained damages therefor.

Hoyne, on January 23, 1933, by his answer to the amended second supplemental cross-bill of the McElvains, denied any criminal conspiracy; denied that he participated in a conspiracy; denied that he was bound by the decree

entered in the superior court on April 3, 1925; denied that the matter alleged in the amended cross-bill was germane to the original proceeding; denied that the appeal bond was intended to cover anything except the liability expressly set forth in the bond; denied the purpose of Hoyne's suits in New York and New Jersey was to defeat the jurisdiction of the superior court of Cook county, but averred that the trial court in Illinois had no jurisdiction of the matters involved in those suits; that by the settlement agreement of August 21, 1930, the McElvains agreed to be bound by the determination of the cause in New York; that the amended second supplemental cross-bill was improperly filed because the cross-bill which it purported to amend was filed prematurely and that the matter therein was not germane to the original proceedings in this cause, and that the McElvains have a full, complete and adequate remedy at law.

Burton and the Burton Coal Company on February 3, 1933, filed an answer denying that the agreement of Burton and the Burton Coal Company with the steel corporation for the execution of the appeal bond, or the appeal bond, was executed in furtherance of any conspiracy, denied that the decree of April 3, 1925, was in any respect affirmed by the Supreme Court, and denied that the conditions of the appeal bond had been breached or that there was any liability on the bond.

On May 23, 1933, Hoyne filed an additional answer to the McElvains' amended second supplemental cross-bill filed January 13, 1933, in which he averred that he had become entitled to his fee for prosecuting the claim of the Burton Company against the United States upon the recovery of the judgment; that the McElvains and Mrs. Crozier had full information about the claim against the United States and of Hoyne's interest prior to the judgment; that they well knew that he, Hoyne, was the attorney for Burton referred to in the McElvains' cross-bill

filed November 28, 1923, and well knew the interest of Hoyne in the Burton Company judgment, and that when they presented to the chancellor the decree which was subsequently filed, after material changes therein had been made, April 3, 1925, it contained reference to Hoyne by name and sought to have findings made against him, although he was not a party, and that the chancellor of his own accord struck out all reference to Hoyne in the decree. He averred further that the solicitors approving the consent decree of August 7, 1930, sought to have findings made therein against Hoyne by name, and that the chancellor refused to make such findings but caused Hoyne's name to be struck out of the decree; that Mrs. Crozier, the original complainant, was dismissed out of the suit on the motion of her solicitor on November 14, 1930, and that the latter, Mrs. Crozier's solicitor prior to that time, had since that time in fact appeared in the cause as solicitor for the McElvains, whose interest in the original proceeding was adverse to the interest of Mrs. Crozier. The answer averred further that the judgment was paid to the Burton Company before either Hoyne or the steel corporation was made a party defendant to this proceeding, and charged that because of the collusion of the solicitor for the original complainant and the solicitor for the McElvains, while representing adverse interests in the cause, the McElvains were estopped to have any recovery herein, and that the consent decree of August 7, 1930, in derogation of his rights, should be vacated and set aside and that he should be dismissed out of the cause.

Hoyne made motions to dissolve the injunctions granted to the McElvains and to the United States Steel Corporation and to dismiss the amended second supplemental cross-bill, all of which were overruled. Hoyne then presented his constitutional objections, charging that by the several orders of the superior court granting and refusing to dissolve, and by the continuance in force and effect of the

several and separate preliminary injunctions of January 12 and January 13, 1933, and each of them, he had been, and was, deprived of his rights guaranteed by the fifth and fourteenth amendments to the Federal constitution and by sections 1, 2 and 5 of article 2 of the constitution of this State. The cause then proceeded to trial, and on March 26, 1935, a decree was entered.

Additional facts and circumstances appear from the record. Prior to the entry of this decree, Fred A. Burton, Mrs. Crozier and the administrator of Frank Crozier, deceased, filed disclaimers. The Foreman Bank filed an answer but offered no proof to support its claim. Edwards disclaimed any personal interest in the fund and averred that he was merely holding it for the steel corporation. The answer of the Burton Company asserted that certain payments had been made to Hoyne reducing the amount to which he would be entitled. This claim of the Burton Company and its assignee, the fuel company, was denied, as well as those of Burton, Mrs. Crozier, the administrator of Frank Crozier, deceased, and the Foreman Bank. Nor did the decree award any recovery in favor of the McElvains against the United States Fidelity and Guaranty Company, and the latter was necessarily found to have no interest in the fund.

The decree of March 26, 1935, recites that after the chancellor had announced his decision in favor of Mrs. Crozier and the McElvains in the original suit and had directed the preparation of a decree, on March 28 or April 2, 1925, the Burton Company executed an assignment to Hoyne of a one-third interest in and to the judgment of the Burton Coal Company against the United States; that the proceeds of the judgment were paid in January, 1928, to the trustee of collateral for the steel corporation, and that the assignment was invalid to every one in the present proceeding except Burton and the Burton Coal Company; that with respect to the appeal bond, irrespective of

whether Hoyne disclosed any interest in the fund, his action in assisting in making the indemnity agreement estopped him from claiming the fund ahead of the parties to this suit; that, in particular, his claim to the fund was subject to the prior claim of the Freeman Company and the McElvains, stockholders of that company. The decree further found that the McElvains were by virtue of the findings of the consent decree of August 7, 1930, entitled to $470,000, less $300,000 thereafter paid to the McElvains; that after the agreement of August 21, 1930, the steel corporation paid the McElvains $300,000, and that James W. McElvain in turn paid Mrs. Crozier approximately $171,000, and became subrogated to her rights as against Burton, the Burton Coal Company and the Freeman Mining Company; that Hoyne was a party to all the actions, and in all the proceedings an adviser, of Burton; that his actions were sufficient to estop him from claiming such fund as against Mrs. Crozier, the McElvains and the Freeman Company, and that his claim was subject to the prior rights of Mrs. Crozier and the McElvains, and that he was the attorney for Burton in the matters culminating in the bill filed by Mrs. Crozier. The chancellor held that the material allegations of the steel corporation's cross-bill had been sustained and that it was properly filed.

The decree denied the claim of the United States Fuel Company. It found that $3551.12 spent as costs in the case of the Burton Company against the United States should be deducted from the amount collected on the judgment before computing Hoyne's interest therein. The decree further found that payments amounting to $29,499.96, made by the Burton Company to Hoyne from July 6, 1922, to March 16, 1925, were retainer fees, and not advances against Hoyne's contingent fee in the matter of the claim of the Burton Company against the United States. The claim of the Burton Company and the United States Fuel Company to deduct this amount from Hoyne's fee was de-

nied. The court then found that there was due the Mc-Elvains the sum of $170,000, and due Hoyne, to and including March 26, 1935, the date of the decree, $84,639.53, both of which sums were in the hands or under the control of the steel corporation; directed that upon the payment of these sums the injunctions be made permanent, and that upon the payment of $170,000 to the McElvains or their solicitors the steel corporation and Edwards be relieved from any liability to the Freeman Company and the Mc-Elvains, and that the United States Fidelity and Guaranty Company be relieved from all liability on the appeal bond, and that upon the payment of $84,639.53 to Hoyne the steel corporation and Edwards be relieved of further obligations to Hoyne. The decree expressly denied the several motions of Hoyne to dismiss the amended second supplemental bill and cross-bill of the McElvains and to dissolve the temporary injunction issued on their motion, or, in the alternative, to require an additional bond to the Mc-Elvains, and also the several motions of Hoyne to dismiss the cross-bill of the steel corporation and to dissolve the temporary injunction heretofore issued on its motion, or, in the alternative, to require an additional bond of the steel corporation.

Upon the conclusion of the trial Hoyne renewed his constitutional objections in the particulars specified in his motions presented July 12, 1934, and October 16, 1934. The right of this court to consider the case on direct appeal is not questioned. Furthermore, it appears that a constitutional question is necessarily involved in this case and that the appeal has been properly prosecuted to this court. *VanDyke* v. *Illinois Commercial Men's Ass'n*, 358 Ill. 458.

To obtain a reversal of the decree of March 26, 1935, the dissolution of the injunctions of January 12 and 13, 1933, and the remandment of the cause, with directions to assess his damages, Hoyne makes several contentions. He urges that it has been adjudicated in this cause that the

McElvains have no interest in the fund they seek to reach, namely, the proceeds of the judgment recovered by the Burton Company. The interest claimed by the McElvains was as stockholders of the Freeman Company. Referring to the contract with the United States, the violation of which resulted in the judgment, this court in its opinion in *Crozier* v. *Freeman Coal Mining Co. supra,* said: "The contract contained no provision for the sharing by the Freeman Company in any sum which might be recovered by the Burton Company against the government as damages to the Burton Company for failure of the government to perform. The government having failed to perform, as has been already stated, the Burton Company recovered a judgment in the United States Court of Claims against the government, in which the damages were assessed at $445,528.40, and the present decree found that $219,762 of that amount belonged to the Freeman Company and directed the assignment of the judgment to that extent to the Freeman Company. The appellants contend that this was error. The contract between the Burton Company and the Freeman Company did not make any provision in anticipation of the government failing to perform its contract with the Burton Company and did not constitute a sale of the coal by the Freeman Company to the Burton Company. * * * There was no contractual relation between the United States and any of the mines whose coal was the subject matter of the contract. * * * The only coal sold under this contract was sold by the Burton Company to the government. * * * For the further reason of Crozier's interest in the subject matter of this contract, which he obtained without informing his client of his interest, the contract, even if it could be interpreted as giving the Freeman Company an interest in the damages recovered against the United States, could not be enforced by Crozier, and since the Freeman Company was interested with Crozier neither could it enforce the contract."

The McElvains asserted in their petition for rehearing previously mentioned, as set forth in the additional opinion of this court filed on October 19, 1929, that the opinion as adopted and filed on February 20, 1929, would deprive them of a right in and to this fund. They accordingly urged a modification of the opinion and mandate. This the court refused to do. The McElvains are now taking the contrary position, namely, that the opinion of this court did hold that their alleged interest attached to the fund in controversy. We are not inclined to depart from the original position of this court.

Analysis of the contract between the Burton Company and the United States is also found in *United States* v. *Burton Coal Co.* 273 U. S. 337. The Federal Supreme Court said: "The judgment is for damages for breach of contract by the United States to accept and pay for coal purchased from appellee for use at army posts in the Chicago district." In its opinion the United States Supreme Court refers to the government as appellant and to the coal company as appellee. The opinion continues: "Appellant and appellee made a contract as of September 10, 1920, by which the former agreed to take and pay for, and the latter agreed to furnish and deliver, 150,000 tons of coal at $6.75 per ton. The contract contemplated the production of the coal at mines in southern Illinois—40,000 tons at the White Ash mine of the Johnston City Washed Coal Company, 50,000 tons at the Paradise mine of the Forester Coal and Coke Company, and 60,000 tons at the Freeman mine of the Freeman Coal Mining Company. But it was agreed that appellee might furnish coal from other mines if, for any reason for which it was not responsible, it should be unable at any time to furnish coal in sufficient quantities from the mines mentioned. Appellant agreed to furnish cars and give shipping directions. Appellee agreed to make deliveries on cars at each of the mines in specified quantities per week. * * * The contract was not for production

or mining, but for sale and delivery of coal. Appellant and appellee were the only parties to it. There was no contract relation between appellant and any of the mining companies. Their default would not make them liable to appellant or relieve appellee from the obligation to deliver the coal to appellant."

Where a judgment is reversed by an appellate tribunal the judgment of that court is final upon all questions decided and those questions are no longer open to consideration. If the cause is remanded, the court to which it is remanded can take only such proceedings as conform to the judgment of the appellate tribunal, and, if specific directions are given, the court can do nothing but carry out such directions. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 Ill. 213; *People* v. *Waite,* 243 id. 156; *Union Nat. Bank* v. *Hines,* 187 id. 109.) The adjudication by this court that the McElvains had no interest in the proceeds of the judgment obtained by the Burton Company against the United States is controlling on the present appeal.

Hoyne also contends that the McElvains are not entitled to relief because the fund sought to be reached was deposited with the steel corporation to indemnify that corporation in the event it should be called upon to pay a liability on the appeal bond; that the indemnity was discharged, the decree of April 3, 1925, was, in effect, expunged from the record, and that liability on the appeal bond was terminated by the reversal of the decree under which the appeal bond was given. Similarly, the fuel company takes the position that the McElvains have no valid claim against the fund, or against any of the claimants to a specific portion thereof, for the reason that there is no liability on the appeal bond. The steel corporation admits that if liability on the bond was discharged in consequence of the reversal of the decree of April 3, 1925, it has no further personal interest in the fund.

It is conceded that the remainder of the proceeds of the judgment is in the possession of Edwards, as trustee for the steel corporation, and that he is in New York. Likewise, it is not controverted that the money in question was deposited with the steel corporation conformably to its agreement with Burton and the Burton Company, by which they agreed to indemnify the steel corporation against any liability which might arise from its obtaining the appeal bond.

The record shows that by the agreement of May 16, 1925, Burton and the Burton Company assigned to the steel corporation certain securities and the judgment in favor of the Burton Company against the United States as collateral security for their performance of the agreement to indemnify the steel corporation against any damages which it might incur as a result of procuring the appeal bond for the defendants in the original action. The McElvains maintain that the pledge of assets as security for the purpose of obtaining the appeal bond was fraudulent and in furtherance of a conspiracy. Their assertion carries its own condemnation. Manifestly, the Burton Company, and Burton individually, enjoyed the right to prosecute an appeal from the erroneous decree entered by the trial court on April 3, 1925. The pledge of the assets of the Burton Company to the steel corporation for the lawful purpose of effecting the appeal cannot be said to have been fraudulent. Moreover, the appeal bond was given to afford protection to the McElvains in the event of an affirmance of the decree of the superior court rendered on April 3, 1925. The condition of the bond was that the defendants "shall duly prosecute their said appeal with effect, and moreover pay the several amounts in said decree provided * * * and * * * shall do and perform the several things in said decree provided * * * in case the said decree shall be affirmed in said Supreme Court." The decree was not affirmed in this court. Indeed, the McElvains and Mrs. Cro-

zier made a vigorous attempt to induce this court to modify its opinion and mandate to conform to their view that the opinion of February 20, 1929, affirmed the decree of the trial court in part. They insisted in 1929 that the effect of the opinion and the mandate would be to reverse the decree and discharge liability on the appeal bond. The court denied their requests and expressly adhered to its original opinion. The mandate issued pursuant to the opinion of this court specifically stated that "the decree of the superior court of Cook county in this behalf rendered, be reversed, annulled, set aside and wholly for nothing esteemed, * * * and * * * that the said appellants recover of and from the said appellees their costs by them in this behalf expended to be taxed, and that they have execution therefor."

The judgment of reversal entered by this court abrogated the decree of the superior court entered on April 3, 1925, and expunged it from the record. (*Western Shade Cloth Co.* v. *Industrial Com.* 325 Ill. 570; *Watkins* v. *Dunbar,* 318 id. 174; *Ure* v. *Ure,* 223 id. 454; *Cable* v. *Ellis,* 120 id. 136; *Chickering* v. *Failes,* 29 id. 294.) Following the judgment of reversal by this court no duty rested upon the appellants in *Crozier* v. *Freeman Coal Mining Co. supra,* to pay or to do the things provided for by the decree of April 3, 1925. No obligation under the original decree remained to be performed. On the other hand, their sole obligation was to comply with the decree of the trial court, which this court directed should be entered in accordance with its directions.

The record speaks for itself and proclaims that Burton and the Burton Company prosecuted their appeal "with effect," conformably to the condition of the bond. Our attention is directed to seven important particulars in which the original decree was specifically reversed: (1) A money decree in favor of Mrs. Crozier for $63,526.35 against the Freeman Company, Burton and the Burton Company was reversed; (2) a money decree in favor of Mrs. Crozier

against John J. Sherlock for $50,428.70 was reversed; (3) a money decree in favor of Mrs. Crozier against the Freeman Company, Burton and the Burton Company for $50,000, with interest at twenty per cent per annum, was wholly reversed as to Burton and the Burton Company, and reversed as to the Freeman Company to the extent that interest was allowed at more than seven per cent; (4) money decrees in favor of Mrs. Crozier against Carley H. Hoy aggregating $143,536.25 were reversed; (5) the provision of the decree removing Sherlock as trustee was reversed; (6) the decree that the Freeman Company had an interest of $219,762 in the judgment which the Burton Company had recovered against the United States was reversed; and (7) the provision of the decree appointing a receiver for the Freeman Company was reversed. Obviously, the appellants in *Crozier* v. *Freeman Coal Mining Co. supra,* prosecuted their appeal "with effect," within the meaning of those words as employed in the appeal bond. The judgment of this court was in favor of the appellants and costs were adjudged against the appellees. It necessarily follows that the appeal bond predicated on the decree of April 3, 1925, was discharged. The bond was not conditioned on compliance with a new decree. Failure to comply with the consent decree of August 7, 1930, therefore affords no right of action on the bond.

An illustrative case supporting our conclusion is *Rothgerber* v. *Wonderly,* 66 Ill. 390. It appears that Henry Wonderly obtained a judgment for $1250, "less $600 to be remitted," against James H. McCausland. The defendant, McCausland, appealed to this court, and to perfect his appeal gave a bond in the usual form, with Leonard Rothgerber as surety. On appeal this court found that there was no error in the record except that the judgment was inadvertently entered for too large a sum, for which reason the judgment was reversed and the cause remanded, with directions to the trial court to permit the plaintiff to

enter a *remittitur* and have a judgment rendered in his favor for the correct amount, namely, $650, which was subsequently done. This court, in holding that there was no liability on the appeal bond, said: "It is insisted that the judgment in the case of *McCausland* v. *Wonderly,* 56 Ill. 410, was, by the action of this court, in effect affirmed, and hence that the appellant is liable under the conditions of the bond. Such was not the case. The judgment appealed from was really a judgment for $1250, although the record recited that it was to be 'less $600 to be remitted.' Nevertheless, it was a valid judgment for the former amount, upon which execution could have been issued, and the plaintiff might, if he chose, omit to enter the *remittitur,* although it was his plain duty to do so. This judgment on appeal was, in fact, reversed, and on the remandment of the cause the court was directed to enter one for a much less sum. The undertaking of appellant as security on the appeal bond was, that the appellant in that case, should 'duly prosecute his appeal with effect,' and pay the amount of the judgment 'rendered and to be rendered' against him in the Supreme Court in case the judgment should be affirmed. This, appellant in that case did do 'with effect.' The judgment appealed from was for $1250. It was reversed, and he was certainly not bound by the conditions of his bond to pay the amount of that judgment. The only judgment rendered by the Supreme Court was one of reversal. No judgment whatever was rendered against appellant in that case. It was in his favor, and the costs were adjudged against appellee. The legal effect of the words 'rendered and to be rendered,' contained in the appeal bond, is, that appellant shall pay the judgment theretofore rendered against him in the court below, and such judgment as shall be rendered by the Supreme Court in case the judgment shall be affirmed, and if he shall make default therein, the liability of the surety will be the same. It would be a singular construction to give to those words,

to hold that the surety on the bond shall pay such judgment as shall thereafter be rendered by the circuit court, whether such judgment shall be rendered on a trial *de novo,* or under the mandate of this court. The words will bear no such construction."

The rule set forth in *Rothgerber* v. *Wonderly, supra,* obtains in other jurisdictions. *Heinlen* v. *Beans,* 71 Cal. 295, 12 Pac. 167; *Nolan* v. *Glynn,* 183 Iowa, 21, 166 N. W. 717; *Lehman* v. *Amsterdam Coffee Co.* 151 Wis. 207, 138 N. W. 606; *Fitchner* v. *American Surety Co.* 2 F. Supp. 321.

On June 11, 1929, prior to the final disposition of *Crozier* v. *Freeman Coal Mining Co. supra,* in this court, and more than a year before the steel corporation was made a party to this suit, the latter caused the fund to be transferred from its nominee, Cochran, in this State, to its successor trustee, Edwards, in New York. Since the purpose of the deposit of the proceeds of the Burton Company's judgment with the steel corporation's trustee was satisfied upon the reversal of the decree of April 3, 1925, the money was no longer subject to any claim by the steel corporation and was freed from any obligation in connection with the proceeding originally instituted on December 22, 1922. Thereafter the money was outside of the jurisdiction and not subject to any decree of the superior court of Cook county. Specifically, the fund was in New York when Crozier instituted his suit in that State and also when Hoyne was added as a party defendant in that litigation. The steel corporation first filed a plea to the jurisdiction in the present proceeding. Prior to December, 1932, when it appeared generally in this case, the Supreme Court of New York had held that the Crozier suit was one in *rem* and that the *res* was in the control of the New York court. (*Crozier* v. *United States Steel Corp.* 144 Misc. 727.) In the case cited the New York court held that it had jurisdiction of the parties and the subject matter.

Counsel for the McElvains, to sustain their cross-appeal, insist that Hoyne was enriched by reason of fees paid him as attorney for defending Burton and the Burton Company in a conspiracy proceeding, and that the payment of such sums prevented his clients from responding in full under the accounting awarded to them, the McElvains, by this court. Their contention is answered by the fact that Hoyne was not a party to the proceeding assailed. It is obvious, however, that Hoyne prosecuted the claim of the Burton Company against the Federal government to a successful conclusion, that the judgment rendered in favor of the Burton Company was paid, and that out of this sum the McElvains and Mrs. Crozier have received payments aggregating $300,000. Pursuant to a settlement with the steel corporation this amount was paid to them out of moneys which had been secured for the Burton Company owing to Hoyne's efforts. If there has been any enrichment in this case it is manifest that it has been in favor of the McElvains and Mrs. Crozier.

Hoyne invokes section 12 of "An act to revise the law in relation to injunction," which provides that in all cases where an injunction is dissolved, the court, after dissolving such injunction and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting in writing the nature and amount thereof, shall hear evidence and assess such damages as the evidence of the case may require and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same. (Ill. State Bar Stat. 1935, p. 1801; Smith's Stat. 1935, p. 1787.) This court had occasion to construe section 12 in *Darst* v. *Gale*, 83 Ill. 136, where it said: "This clearly covers *all* cases, as well where the injunction is but part of or incident to the principal relief sought, as where it is the sole object of the bill; and the damages to be assessed after the dissolution of the injunction and before finally disposing of the suit, are such

as have been sustained, without regard to whether the injunction was dissolved by an interlocutory order on motion for that purpose, or on final hearing." To the same effect are *Kohlsaat* v. *Crate,* 144 Ill. 14, and *Walker* v. *Pritchard,* 135 id. 103. The present record presents a situation where section 12 is singularly applicable.

Our disposition of the issues considered renders it unnecessary to consider other contentions urged by the respective parties to the appeal and the two cross-appeals.

The decree of the superior court is reversed and the cause is remanded to that court, with directions to dissolve the injunctions issued against Hoyne and to dismiss the cross-bills, but to retain jurisdiction of the cause for the sole purpose of assessing Hoyne's damages in conformity with this opinion.

*Reversed and remanded, with directions.*

Mr. Justice Shaw, dissenting.