## William S. Potwin, et al., v. A. H. Grunewald, doing business as J. P. Gross & Co.

### Gen. No. 11,937.

1. DIRECTORS—*hold over, until successors are elected and qualify.* Directors of a corporation not for pecuniary profit hold over until their successors are elected and qualify.

2. DISSOLUTION—*what does not work, of corporation not for pecuniary profit.* The failure of a corporation not for pecuniary profit to file the certificate of the election of new directors, as required by statute, does not automatically work its dissolution.

3. PROMISSORY NOTE—*when corporation and not its officers liable upon.* The officers of a corporation irregularly elected, but recognized as such officers, are not personally liable upon a promissory note executed by them in the name of and for the benefit of the corporation which they so *de facto* represent.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed. Opinion filed October 6, 1905.

**Statement by the Court.** This appeal is from a judgment of the Superior Court of Cook county recovered by appellee against appellants upon a promissory note for $486.92, dated October 28, 1899, payable to J. P. Gross & Co. four months after date with interest at the rate of six per cent. per annum after date, and signed

"ILLINOIS INDUSTRIAL ASS'N,

W. S. POTWIN, Prest.,

(Stamp.)      Jos. P. PLUMMER, Treas."

Potwin v. Grunewald.

The declaration consisted of the common counts in assumpsit. To this appellants pleaded the general issue.

Upon the trial it was shown that the Illinois Industrial Association was incorporated in 1894, not for profit, by appellant Potwin and others, its object being to aid discharged prisoners in efforts to reform and to obtain an honest living; to employ temporarily such persons in some suitable kind of work and to obtain work for them; to acquire by lease, purchase or gift the necessary real estate for temporary shelter and for shops, in which to manufacture such articles as would give the desired temporary employment and afford an opportunity of teaching them mechanical pursuits, with the privilege of selling the manufactured product.

The petition for a charter for the association, filed March 27, 1894, contained as required by Section 29 of the Corporation Act, the names of the directors who were to manage the association for the first year. These were: William S. Potwin, A. K. Parker, B. M. Butler, G. F. Fisk, Joseph Schneider, C. W. Story and A. C. Dodds. The Secretary of State on March 29, 1894, issued thereon a certificate of incorporation which was recorded by the recorder of deeds of Cook County, Illinois. Subsequent to that time nothing pertaining to the association was filed for record in the office of the recorder of deeds of Cook County. On April 6, 1894, the association met and chose directors, electing those named in the petition, except that A. M. Day was chosen instead of A. C. Dodds. The directors held a meeting on the same day and elected W. S. Potwin, president, George F. Fisk, secretary, and B. M. Butler, treasurer.

On March 20, 1896, at a meeting of the members of the association, Day, Storey, Fisk and Schneider resigned as directors and owing to the death of Mr. Butler there were five vacancies in the board of directors, which were filled as follows: Mr. Virtue and Mr. J. P. Plummer were chosen directors for one year, and Mrs. Helen Campbell, Mrs. L. A. Coonley and H. C. Herring for two years.

On April 16, 1896, another meeting of the association was held at which an amendment to the articles of the association was adopted, increasing the number of the board of directors to fifteen. Without waiting to record the certificate of this amendment, six new directors were chosen, and the new board thus chosen elected the following officers: Mr. Potwin, president; Dr. Herring, vice-president; Mr. Plummer, treasurer, and Mr. Virtue, secretary.

Prior to January, 1898, the corporation purchased from appellee certain broom corn which was used by it in the conduct of its business, and on October 28, 1899, the note in question was given to appellee in payment of the balance owing for the broom corn at that time. On November 10, 1899, a payment of $50 was made on the note and indorsed on the back of it.

Proper objection was made to the admission of the note in evidence upon the ground that it is the note of the corporation and not of defendants and that they are not individually liable thereon, which was overruled by the court and exception was preserved. At the close of the evidence the defendants tendered to the court and requested it to hold the following proposition of law: "The court holds that, under the law and the evidence in this case, the finding of the court should be for the defendant." The court declined to hold this proposition and marked it refused, and defendants preserved an exception. Thereupon the court found in favor of the plaintiff for the sum of $540.92 and rendered judgment on the finding, and defendants excepted.

Leroy D. Thoman, W. S. Oppenheim and Gilbert Noxon, for appellants.

Lackner, Butz & Miller, for appellee.

Mr. Presiding Justice Smith delivered the opinion of the court.

The question presented by this record is whether or not the defendants (appellants) are liable personally upon the note offered in evidence. The position of the plaintiff upon

this question is that defendants gave the note without warrant or authority from the Illinois · Industrial Association which was dissolved and non-existent at the time the note was given, and, therefore, the note was not binding upon the association but did bind the defendants.

The liability of the defendants is not predicated upon the form or phraseology of the note by these contentions. It is not urged that the instrument contained apt words to charge the defendants personally so that by rejecting the words as to the agency the agent may be held answerable as the promisor of the note.    The plaintiff rests the liability of the defendants: (1) upon the proposition that before the note was signed the Illinois Industrial Association was dissolved by operation of law; or (2) if it did not cease to exist upon the failure to file the required certificate when new directors were elected, it lost its *de jure* character or condition and became a *de facto* association; and (3) the defendants were without authority to bind the association and are consequently liable upon the contract themselves.

The suit was founded and the finding of the court was based upon a promissory note executed by the defendants as officers of the corporation, for the ·corporation.   No attempt was made to show that the defendants personally had ever made a contract with the plaintiff outside of the giving of the note in question.   The evidence shows that the consideration of the note was the balance due for broom corn sold by the plaintiff to the corporation some years prior to the giving of the note.

There is no controverted question of fact in the record. It is not claimed that the members or officers of the Illinois Industrial Association, at any time prior to the making of the note in question, did anything or ·took any· action manifesting a purpose to surrender its charter or to dissolve the corporation.   The fact relied upon to *ipso facto* work a dissolution of the corporation under the statute is the omission to file a certificate of the election of new directors, as provided by the statute.   It is argued that in legal effect, though not by express provision, the statute, as a penalty

for the omission to file a certificate of the election of new
directors, works a complete automatic dissolution of cor-
porations not for pecuniary profit, organized under sec-
tions 29 and 30 of the Corporation Act of 1872.

It is conceded in argument that this question has never
been passed upon by the courts of this State. We are left,
therefore, to a consideration of the scope and effect of our
Corporation Act, with such aid as may be afforded us by
the general principles of law applicable to dissolution of
corporations for omission of prescribed duties in the absence
of specific statutory provisions upon the subject.

It cannot be seriously questioned but that the Illinois In-
dustrial Association was organized under the Act of 1872,
and that the Secretary of State on March 27, 1894, issued
a certificate of complete organization, which was duly filed
for record in the office of the Recorder of Deeds of Cook
County on March 29, 1894. Thus the association became
a complete *de jure* corporation. The question then is, did
the corporation lose its *de jure* character or become auto-
matically dissolved by the failure to certify the elections of
directors as provided by the statute ?

In Boston Glass Manufactory v. Langdon, 24 Pick. 49, it
was said that "the elementary treatises on corporations de-
scribe four methods in which they may be dissolved. It is
said that private corporations may lose their legal existence
by the act of the legislature; by the death of all the mem-
bers; by a forfeiture of their franchise; and by a surrender
of their charters. 2 Kyd on Corp. 447; 1 Bl. Comm. 485; 2
Kent's Comm. (1st ed.) 245; Angell & Ames on Corp. 501;
Oakes v. Hill, 14 Pick. 442. No other mode of dissolution
is anywhere mentioned or alluded to."

In that case it is further held : " Although a corpora-
tion may forfeit its charter by an abuse or misuse of its
powers and franchises, yet this can only take effect upon a
judgment of a competent tribunal. 2 Kent's Comm. (1st
ed.), 249; Corporation of Colchester v. Seaber, 3 Bun. 1866;
Smith's Case, 4 Mod. 53. Whatever neglect of duty or
abuse of power the corporation may have been guilty of, it

is perfectly clear they have not lost their charter by for-
feiture. Until a judicial decree to this effect be passed,
they will continue their corporate existence. The King v.
Amery, 2 T. R. 515."

These we conceive to be the grounds and the methods
for and by which corporations may be dissolved at common
law, and in the absence of statutory enactments governing
the subject.

What then are the provisions of the Corporation Act of
1872 which bear upon the class of corporations here in-
volved ?

After giving corporations not for pecuniary profit power
to make by-laws, in section 31, the act provides in section
32 that they " may elect trustees, directors or managers
from the members thereof at such times and places, and for
such periods as may be provided by the certificate of incor-
poration, or in case such certificate does not contain such
provisions, then as may be provided by the by-laws." It
is also provided in the same section that " whenever trustees,
managers or directors shall be elected, a certificate under
the seal of the corporation, giving the names of those
elected and the term of their office, shall be recorded in the
office of the recorder of deeds, where the certificate of
organization is recorded."

The statute is silent as to whether or not the directors
when once elected shall hold office until their successors are
elected, and so is the certificate of incorporation. The
by-laws, however, provide that the directors and officers
shall hold office until their successors are elected and qual-
ified. This is undoubtedly the implication of law in the
absence of any provision of the by-laws or statute to that
effect. This, however, has no bearing upon the question
under consideration, unless it should be considered that the
election of directors under the statute is incomplete until
the certificate of their election is filed in the recorder's
office—a question which we do not deem it necessary to
pass upon in reaching a conclusion in this case. Upon the
question of the legal existence of the corporation it is im-

material whether new directors have been elected, or whether the original board continued to hold over, or whether there were any directors or officers. Boston Glass Manufactory v. Langdon, *supra*.

It is contended by appellee that one of the results of the failure to record the certificate of election is to dissolve the corporation when the terms of all the directors last properly recorded expired. In support of this construction of the statute it is urged that the legislative intent is shown by the language of the statute to make the powers and duties of the directors come into being and use only upon the recording of the certificate; and that this is made apparent by the fact that the act expressly provided as to the other four great classes of corporations mentioned therein that failure to elect directors should not dissolve the corporation.

We cannot yield assent to such a construction to the Act of 1872. We do not find any evidence of such legislative intent in any part of the statute. It is asking the court to reach a very sweeping conclusion without any adequate premise on which to base it. To hold that because the legislature omitted the clause that failure to elect directors should not dissolve the corporation, in the sections of the statute concerning corporations not for pecuniary profit, it intended to provide for their automatic dissolution upon a failure in any case to record the certificate of election, would be a most drastic piece of judicial legislation. In our opinion a contrary legislative policy is indicated both in the Act of 1872 and in subsequent legislation providing for the dissolution of corporations.

Counsel for appellee urge upon the court another view of the situation of this association resulting from the failure to file a certificate of election, namely: that, if it be held that association did not cease to exist, yet until at the end of the term of any given board a certificate of the newly elected directors was filed, the Illinois Industrial Association lapsed from a *de jure* corporation and became simply a *de facto* corporation, and being in that condition when the

note was signed the defendants became liable under the rule of Loverin v. McLaughlin, 161 Ill. 417.   Our attention is not directed to any law for this change in the corporation, and we do not know of any authority supporting that view.

It is contended finally that, waiving the question that through failure to record the certificate of election of directors the association ceased to exist as a corporation, and the question that by such failure the association became a *de facto* corporation, and assuming that the association at the time of giving of the note was an existing, wholly authorized corporation, even then the defendants failed to bind the corporation and therefore bound themselves, because the defendants usurped a pretended authority, to sign the note.

In support of this contention our attention is called to the fact that on March 20, 1896, five absolutely new directors were chosen to fill five vacancies in a board of seven directors, and that on April 16, 1896, the association met and attempted to change the articles of incorporation by increasing the number of directors to fifteen.   And upon the same day proceeded to choose six new members to fill places in this enlarged board without filing for record any certificate of this change in the articles of association, and that the new board thus illegally constituted elected new officers of the corporation, among whom were the defendants.

The irregularity of the proceedings is apparent, and indeed their legality may be more than doubted.   It may be conceded that upon proper proceedings to test the legality of the election of defendants to the respective offices held by them, the election would be held invalid.   But they were acting as president and treasurer respectively without question by anyone and were recognized by the members and officers of the association as holding those offices, and were discharging the duties of such offices.   In our opinion, under such circumstances their acts within the scope of the usual powers of such officers bound the corporation, and it could

not avoid the consequences of their acts by setting up the irregularities of their election here relied upon. Having dealt with them as such officers we do not think appellee can now raise the question of want of authority in them as acting officers of the association in an action of assumpsit on the note for the purpose of fixing a personal liability upon defendants. Being recognized as the officers of the association and being the active *de facto* officers thereof, they had authority to give a written acknowledgment of the debt of the association to appellee, and a promise to pay the same, as was done by the note in suit. The corporation had received the consideration for the note and had the power to execute it, and the act of making the note was within the usual powers of executive officers of corporations.

The court erred in holding appellants liable upon the note sued on, and the judgment is reversed.

*Reversed.*