(No. 34473.—

WESTLAKE HOSPITAL ASSOCIATION *et al.,* Appellees, *vs.* EINAR BLIX *et al.,* Appellants.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

Daily and Bristow, JJ., dissenting.

Rosenthal & Schanfield, of Chicago, (William P. Rosenthal, Leonard Schanfield, Stanley D. Weinberger, Gilbert Feldman, and James J. Doheny, of counsel,) for appellants.

Brown, Dashow & Ziedman, of Chicago, (Albert Langeluttig, and Jack Joseph, of counsel,) for appellees.

Mr. Chief Justice Davis delivered the opinion of the court:

This is a declaratory judgment action arising out of the adverse claims of plaintiffs and defendants as to which group of directors and which set of bylaws constitute the legal board of directors and bylaws of the Westlake Hospital Association, a not-for-profit corporation.

The cause was submitted on an agreed statement of facts and the trial court entered a judgment finding that the plaintiffs constituted a majority of the legal board of directors of Westlake, and that the bylaws, as last amended by the members, were the legal bylaws.

The facts are not in dispute. Westlake Hospital Association owns and operates Westlake Hospital, located at Melrose Park, Illinois. It is a not-for-profit corporation which succeeded to the assets of Proviso Hospital Association, an Illinois Corporation. For some years prior to 1939, Proviso,

which owned and operated the hospital, had been unable to earn sufficient income to meet its fixed interest charges and taxes. Real-estate taxes had not been paid since 1928 and, of course, no dividends were being paid to stockholders. The board of directors proposed that the hospital be reorganized as a not-for-profit institution for charitable and educational purposes, and emphasized that as a charitable institution the hospital would be exempt from local, State and Federal taxes and regulations and would be able to receive gifts, endowments and legacies.

It proposed to issue $50 par value class A 5 per cent income debentures for each share of preferred stock of Proviso Hospital Association. The holders of the $50 par value common stock were to receive one $50 par value class B 5 per cent income debenture for each share of common stock they held. In addition, each common stockholder was to receive one membership in the new not-for-profit corporation in exchange for each share of common stock held by him. The initial fee for a regular membership was $50 which was deemed and considered to be its value, and could be paid for in class A or B income debentures, in lieu of cash.

The reorganization was carried out as contemplated and Westlake Hospital Association (Westlake) was organized on January 5, 1939, under sections 29-34 of "An Act Concerning Corporations" approved April 18, 1872, as amended. (Ill. Rev. Stat. 1937, chap. 32, pars. 158-163.) Its purpose clause read as follows:

"The corporation is organized for the purpose and with the object of operating and maintaining a hospital for the treatment of all patients alike regardless of creed, race or ability to pay, charging a graduated fee according to ability to pay, but in no case to make any profit; to be maintained by voluntary contributions of charitable inclined persons; to educate young women in the vocation of nursing without cost to them for tuition; to promote medical research for scientific purposes and not for profit."

The original by-laws of Westlake were adopted on March 11, 1939, and provided for three classes of members—regular, life and honorary. The regular members were the old common stockholders of Proviso and such of the debenture holders as should exchange their debentures for memberships. Life members were those who donated an unspecified amount to the hospital fund, and honorary members were those upon whom the board of directors conferred such membership in recognition of service. The right of suspension or expulsion of members rested with the board of directors, which consisted of nine members who were to manage and control the property, funds and affairs of the corporation. They were to be elected for a term of three years by the members. Vacancies were to be filled by the president, or, upon his failure to appoint, then by a majority of the remaining directors. A majority of the elected and acting directors constituted a quorum. There was a house committee and a membership committee. Meetings of the members were to be held annually. Members were given the right to vote in person or by proxy and to cumulate their votes for the election of directors.

The bylaw provision respecting amendments, which is vital to the issues here presented, was at all times as follows:

"ARTICLE 10
AMENDMENTS

"Section 1. Any By-Laws may be repealed, modified, altered or amended or new By-Laws adopted at any regular or special meeting of the Board of Directors by a majority vote of the members of the Board, provided that no such change shall take effect until thirty days after the mailing of notice thereof, with copy of the By-Laws as so proposed by the Board, to all members of the corporation."

At a meeting of the members on June 18, 1949, when Westlake had 1260 regular memberships, 42 life memberships, and no honorary memberships, 779 of which were represented personally and 274 by proxy, Messrs. Akkeron,

Brust, Collatz, Dixon, Elbert, Guerine, Joslyn, Kionka, and Young were unanimously elected to the board of directors, and the board of directors was authorized, at its discretion, to increase the membership from 9 to 11. No other members' meeting, at which directors were elected, was held until January 22, 1953. During the period from June 18, 1949, until January 22, 1953, the board of directors conducted the affairs of the hospital. At a series of directors' meetings during this period, the board of directors was, by resolutions of the directors, expanded until the membership reached 15. The vacancies thus created were filled by the board of directors. This expansion in the number of directors was neither reflected in bylaw amendments, nor was formal notice of the action of the directors sent to the members.

At a duly convened meeting of the board of directors on December 11, 1952, at which time the board purported to consist of 15 members, there were 11 directors present. Of those present, five were members of the original nine-member board of directors which had been elected at the 1949 members' meeting which authorized the board of directors to increase its membership from 9 to 11 members. At this directors' meeting the bylaws were amended by unanimous vote, whereby the number of directors was increased to 15, to serve for terms of not to exceed three years; life members were designated as those who donated $500 or more to the hospital fund; life and honorary memberships were stated to be without interest in the assets and property of the corporation and without voting rights; regular memberships were permitted to pass to the personal representatives, heirs or legatees of the deceased member without limitation; the duties of the house committee were restated in terms more appropriate to a hospital; and a majority of the members was stated to constitute a quorum. Copies of the amended bylaws were mailed to all of the members of Westlake.

At the regular annual members' meeting held on January 22, 1953, subsequent to the mailing of the notice of the amended bylaws, a motion was unanimously adopted approving the acts and doings of the officers and board of directors of Westlake during 1952. The record does not show whether the minutes of the meeting at which the bylaws were amended were read to the members. At this meeting, the members, acting pursuant to the amended bylaws, unanimously elected 15 directors, five for a term of one year, five for two years, and five for three years. At each of the annual members' meetings held during the succeeding years, five directors were elected to fill the terms of the directors whose terms of office were expiring.

On December 15, 1955, there were 1,260 regular memberships outstanding registered in the name of 49 individuals, nine of whom were deceased. There were 42 life memberships held by 42 separate business organizations, individuals or other associations. Prior thereto, various persons, firms and corporations had contributed or pledged approximately $250,000 to be used to expand the hospital facilities.

At a regular meeting of the board of directors on August 16, 1955, certain amendments to the by-laws were adopted by a vote of eight of the directors, defendants in this proceeding, over the negative votes of five directors, plaintiffs herein. These amendments added donation members to the various classes of membership of the corporation. Donation members were defined to be those persons who had or thereafter would donate $50 or more to the hospital and who did not desire to become regular members. They were not to be deemed to have ownership in any of the assets of the corporation. The right to vote was given to life members for every $50 donated, and to each honorary and donation member. Notice of the amendments was promptly sent to all of the members.

Upon receipt of the notice, five individuals called a special meeting of the members which was held on September 6, 1955. The members calling the meeting constituted less than 20 per cent of the regular members, although they held more than 20 per cent of the regular memberships in Westlake. At that meeting, the members purported to amend the bylaws to eliminate donation members, and their right to vote, to grant to the members the residual powers formerly granted to the board of directors, and to take the power of suspension and expulsion from the board and give it to the members. In addition, they provided for a nine-man board of directors to serve for a term of one year with vacancies to be filled by action of the president and remaining board of directors subject to the approval of the members. They gave the right of bylaw amendment to the members, and finally, provided that all actions of the board were to be subject to approval by a majority of the members.

The board of directors met subsequently on November 22, 1955, at which time they purported to amend the by-laws previously adopted by them to provide that as the term of office of each group of five directors expired, their successors were to be elected by the board of directors at their annual meeting. The effect of this amendment was to make the board of directors self-perpetuating and to transfer the right of election from the members to the board of directors. Notice of the amendment was duly sent to all of the members.

Shortly thereafter the members again met and purported to nullify the amendments passed at the previous meeting of the board of directors and to re-establish the right of the members to elect directors and to control the affairs of the hospital. In January, 1956, two boards of directors of Westlake were elected, one by the board of directors at its annual meeting, and one by the members at their regular annual meeting. There were also two sets of bylaws then

in existence, one adopted by the members and one by the board of directors.

The existence of the two boards of directors and the two sets of bylaws was the catalyst which precipitated this litigation. The plaintiffs, directors elected by the members, brought action for a declaratory judgment seeking an adjudication that the board of directors elected by the members and the bylaws adopted by them constitute the legal board of directors and bylaws of Westlake. The defendants counterclaimed for an adjudication that the board of directors elected by the board of directors and the bylaws as amended by them were the valid and subsisting board of directors and bylaws of Westlake.

The case was submitted on an agreed statement of facts to the superior court of Cook County, sitting in chancery, which found the issues in favor of the plaintiffs. By its judgment the trial court held that the board of directors did not have the power to amend the bylaws, and that if the board had such power, its exercise to deprive the members of their right to elect the directors, to vote cumulatively and to amend the bylaws would violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of the State of Illinois. Constitutional questions having been decided by the trial court, the defendants appeal directly to this court.

We are met at the outset with the question of the legality of the directors' meeting of December 11, 1952, which amended the bylaws to provide for 15 directors. It is conceded by the parties that the members validly elected a nine-man board on June 18, 1949; that there were no further meetings or elections of directors by the members until January 22, 1953; that in the interim, and prior to December 11, 1952, the board of directors illegally attempted to increase its membership from nine to 15 in a manner

not authorized by either the governing statutes, its charter or bylaws. However, we conclude that the nine-man board elected in 1949 held over until their successors were elected and qualified. (*Western Cottage Piano & Organ Co.* v. *Burrows,* 144 Ill. App. 350; *Potwin* v. *Grunewald,* 123 Ill. App. 34.) This board, or a majority thereof, necessarily retained the power to act on behalf of the corporation. (*Western Cottage Piano & Organ Co.* v. *Burrows.*) A quorum of this board, having this residuum of power, met in a regular meeting for which proper notice had been given and purported to amend the bylaws. This they clearly would have had the power to do unless their action was invalidated by the presence of additional directors improperly selected. However, notice of the amendment was sent to the members, pursuant to article 10 of the bylaws, and at a meeting of the members on January 22, 1953, a motion was unanimously adopted approving the acts and doings of the officers and directors of Westlake during 1952, and 15 directors were then elected by the members. Thereafter and until September 6, 1955, the members continued to elect 15 directors and acquiesce in this amendment. On the basis of these facts, we conclude that the action of the five hold-over directors on December 11, 1952, as unanimously approved by the members, effectively amended the bylaws of the corporation. (*Supreme Lodge Knights of Pythias* v. *Kutscher,* 179 Ill. 340, 345.) This determination is strengthened by the continued acquiescence of the members in the provisions of the amendment.

After the directors meeting of December 11, 1952, which was duly ratified by the members on January 22, 1953, it became proper for the members to elect a 15-man board of directors. We find neither a constitutional right in the members to vote for directors, nor a constitutional prohibition of the staggered election of directors, in that not-for-profit corporations are not governed by the constitutional

mandate of section 3 of article XI of the Illinois constitution of 1870. *American Aberdeen-Angus Breeders' Ass'n v. Fullerton,* 325 Ill. 323; Cf. *Wolfson v. Avery,* 6 Ill.2d 78.

Section 15 of the 1944 act concerning General Not for Profit Corporations, provides: "The right of the members, or any class or classes of members, to vote may be limited, enlarged or denied to the extent specified in the articles of incorporation or the by-laws. Unless so limited, enlarged or denied, each member, regardless of class, shall be entitled to one vote on each matter submitted to a vote of members. * * * The articles of incorporation or the by-laws may provide that in all elections for directors every member entitled to vote shall have the right to cumulate his vote and to give one candidate a number of votes equal to his vote multiplied by the number of directors to be elected, or to distribute such votes on the same principle among as many candidates as he shall think fit." (Ill. Rev. Stat. 1955, chap. 32, par. 163a14.) In the absence of any constitutional proscription, these provisions are adequate to authorize both cumulative voting by the members and the staggered election of directors. The statutory provision authorizing a limitation upon the right of the members to vote permits the staggered election of directors, and article 3 of the bylaws of December 11, 1952, contemplated such election.

Plaintiffs further argue that two members of the 15-man board were not qualified to hold office at the time the by-laws were again amended in 1955. However, the ineligibility of these two members could not affect the vote of the eligible directors on the 1955 amendments.

With the disposal of this threshold question, we face the dispositive issue of whether the members, or the directors, have the primary power to amend the bylaws of a not-for-profit corporation. We turn first to the act of 1872 under which Westlake was incorporated as an aid in interpreting the applicable law. Section 31 of that act pro-

vided that not-for-profit corporations "may, by their trustees, directors or managers, make by-laws not inconsistent with the constitution and laws of this State, or the United States, * * *. The by-laws of the corporation made by the trustees, directors or managers, may be modified, altered or amended at any such regular meeting, [of members] or at any adjourned session thereof, or at any special meeting called for that purpose." Ill. Rev. Stat. 1937, chap. 32, par. 160.

The statute clearly delegated to the directors the exclusive power to make bylaws, but subjected such bylaws to modification or amendment by the members. The original delegation, standing alone, would certainly vest the directors with the *exclusive* power both to make and amend the bylaws, and consent or ratification of the members would not have been required. There is ample authority that the original delegation to the directors of power to make bylaws, carries with it power to amend without the consent or ratification of the members. (8 Fletcher, Corporations, sec. 4178, p. 684; *Manufacturers' Exhibition Bldg. Co. v. Landay,* 219 Ill. 168, 177.) However, we need not decide this point since we regard the delegation of power to the members to modify or amend bylaws in compliance with the statute, as an additional grant of power. There is no indication in the language of the statute that the power given to them was intended to be exclusive. If, after amendment of the bylaws by the directors with proper notice thereof to the members, no action was taken by the members at the regular annual meeting, an adjourned session thereof, or a special meeting called for such purpose, altering or modifying the amendment made by the directors, then such amendment would certainly become a valid and existing part of Westlake's bylaws.

Article 10 of the original bylaws of the corporation provided that the bylaws may be amended "at any regular or special meeting of the board of directors by a majority

vote of the members of the board, provided that no such change shall take effect until thirty days after the mailing of notice thereof, with copy of the by-laws as so proposed by the board to all members of the corporation."

Plaintiffs earnestly argue that this bylaw, when construed in the light of the Corporation Act of 1872, means that the directors may propose, but only the members may adopt amendments to the bylaws. They point out that otherwise there would be no purpose in mailing a notice of new bylaws to the members. We cannot agree with this contention. Notice under article 10 of the bylaws would inform the members of Westlake of the provisions of the amendment, and such members could then, pursuant to the provision of section 31 of the act of 1872, either modify or amend the directors' amendment, or take no action thereon. However, the correlation between section 31 and article 10 is indecisive. This corporation is now subject to the provisions of the General Not for Profit Corporation Act of 1944. (Ill. Rev. Stat. 1955, chap. 32, pars. 163a-163a100.) Section 3 of the act provides: "The provisions of this Act relating to domestic corporations shall apply to: * * * (b) All not for profit corporations heretofore organized under Sections 29 to 34, inclusive, of an Act entitled 'An Act Concerning Corporations,' approved April 18, 1872, in force July 1, 1872, as amended." (Ill. Rev. Stat. 1955, chap. 32, par. 163a2(b).) Westlake was incorporated under sections 29 to 34 of "An Act Concerning Corporations" approved April 18, 1872.

Section 9 of the act of 1944 provides: "The initial by-laws of a corporation shall be adopted by its board of directors. The power to alter, amend or repeal the by-laws or adopt new by-laws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the by-laws. The by-laws may contain any provisions for the regulation and management of the affairs of a corporation not inconsistent with law or the articles of

incorporation." (Ill. Rev. Stat. 1955, chap. 32, par. 163a8.) Section 15 thereof states that the right of members to vote may be limited, enlarged or denied to the extent specified in the bylaws. (Ill. Rev. Stat. 1955, chap. 32, par. 163a14.) However, article 10 of the bylaws, when construed in the light of these enactments, cannot enlarge the rights of members to make valid bylaws. The board of directors alone had the power to amend the bylaws at all times involved in this litigation, and unless section 14 is unconstitutional it had the right in 1955 to amend the bylaws to provide for a self-perpetuating directorate.

Plaintiffs urge that the articles of incorporation and the bylaws enacted thereunder constitute a contract between the State and the corporation, the corporation and its members, and the members *inter sese,* (*Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364,) and that this contract may not be impaired. (U. S. Const. 14th Amend.; Illinois Const. art. II, sec. 2.) Although we agree with these general principles, we must add that the contract is ever subject to the State's reserved power of amendment, when in the opinion of the legislature the interests of the charitable corporation will be promoted thereby, and to the right of such corporation to amend its bylaws, pursuant to bylaw provisions. (*Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364; *Steen* v. *Modern Woodmen of America,* 296 Ill. 104; *Murphy* v. *Nowak,* 223 Ill. 301; *Supreme Lodge Knights of Pythias* v. *Kutscher,* 179 Ill. 340; *In re Mt. Sinai Hospital,* 250 N.Y. 103, 164 N.E. 871.) By section 146 of the 1919 act, the legislature expressly reserved the right to amend, repeal or modify the Corporations Act in these words: "The General Assembly shall at all times have power to prescribe such regulations, provisions and limitations as it may deem advisable, which regulations, provisions and limitations shall be binding upon any and all corporations, domestic or foreign, formed or admitted to do business under this Act, and subject thereto, and the legislature shall have power to amend, repeal or

modify this Act at pleasure." (Laws of 1919, page 347.) Similar reservation was made in section 100 of the General Not For Profit Corporation Act of 1944, (Ill. Rev. Stat. 1955, chap. 32, par. 163a99), and in article 10 of the bylaws of Westlake pursuant to the provisions of section 33 of the 1944 act. (Ill. Rev. Stat. 1955, chap. 32, par. 163a32.) Therefore the members entered into this contract with the reserved power to amend the statute and bylaws outstanding in the State and in the corporation. This right or power was validly exercised by the board of directors of Westlake.

It is well established in this State that the right of members of a not-for-profit corporation to vote is not constitutionally protected. (*American Aberdeen-Angus Breeders' Association* v. *Fullerton,* 325 Ill. 323, 329 and 330; *People ex rel. Hoyne* v. *Grant,* 283 Ill. 391.) Since the State, through the legislature, retained the right to amend the statutes, and the corporation, pursuant to statute, reserved the power to amend its bylaws, and the right of members of a charitable corporation to vote is not constitutionally protected, it follows that the amendments in issue did not deprive plaintiffs of their constitutional rights.

The wisdom and desirability of a co-optating or self-perpetuating board of directors for a charitable corporation is a question upon which we express no opinion. That line of argument should be addressed to the legislature and not the court. We only find that the creation of such board by valid amendment of the bylaws does not deprive plaintiffs of their constitutional rights. (*Bailey* v. *American Society for Prevention of Cruelty to Animals,* 282 App. Div. 502, 125 N.Y.S.2d 18; *In re Mt. Sinai Hospital,* 250 N.Y. 103, 164 N.E. 871.) No question of fraud or mismanagement has been raised or suggested in the record before us.

We accordingly conclude that the amendments to the bylaws which were adopted by the directors on August 16, 1955, and November 22, 1955, are valid and subsisting, and

that the defendants are a majority of the 15-member board of directors which was legally elected by the board of directors.

The judgment of the trial court is accordingly reversed..

*Judgment reversed.*

DAILY and BRISTOW, JJ., dissenting.