Paul J. Kern and Irving M. Lesch, Plaintiffs-Appellants, v. Chicago & Eastern Illinois Railroad Co., an Indiana Corporation, Alfred MacArthur, David O. Mathews, and F. S. Yantis, Defendants-Appellees.

Gen. No. 48,099.

First District, Third Division.

March 1, 1961.

Rehearing denied June 28, 1961, and opinion modified.

Goldberg & Levin, of Chicago (Mayer Goldberg and Marvin Sacks, of counsel), for appellant.

P. C. Mullen and Gerald J. O'Rourke, of Chicago, for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order sustaining defendants' motion for summary decree and dismissing for want of equity a suit brought by preferred shareholders seeking a declaratory decree holding that defendant company had illegally amended its bylaws in order to create a system of staggered elections of directors, and for injunctive and other relief. The principal issue is whether that amendment is in violation of a provision for cumulative voting and annual election of all directors, as contained in a reorganization plan, a decree of court and the articles of incorporation.

Defendant Chicago and Eastern Illinois Railroad Company was an Illinois corporation until 1940 when, after reorganization under Section 77 of the Bankruptcy Act, it was incorporated as an Indiana corporation. It is licensed to do business in the State of Illinois, where it maintains general offices and transacts business. It has offices and does business in Indiana as well. A plan of reorganization approved by the Interstate Commerce Commission in 1939, 230 I.C.C. Rep. 571, included a provision for the issuance of Class A preferred stock with the right of cumulative voting in the election of directors and for a board of thirteen members, each director to serve one year. That plan was subsequently approved and confirmed by the United States District Court for the Northern District of Illinois, Eastern Division. In the Matter of Chicago & E.I. R.R., Debtor, No. 52871.

Defendant company was duly organized according to plan. Its certificate of incorporation provided for the right of cumulative voting for all stockholders. As to holders of Class A stock (preferred), it was provided that so long as any such stock should remain outstanding, the consent of at least two-thirds thereof should be given to amend, alter or repeal any provisions of the certificate of incorporation or bylaws which have refer-

ence to preferences, voting rights, and other incidents of the Class A stock. The certificate also provided for thirteen directors and stated that they should serve for a period not exceeding one year. Bylaws were adopted which conformed to the plan and the certificate of incorporation, and the company operated thereunder until 1953. These will be examined in greater detail later in this opinion.

On July 10, 1953, the railroad's board of directors approved an amendment to the bylaws which provided for thirteen directors, four of whom were to hold office for one year, four to hold office for two years, and five to hold office for three years, and that as each director's term of office expired, he or his successor was to be elected to office for three years. Thus, the maximum number of directors to be elected in any one year was to have been five and the minimum, four, thereby creating a system of classified directors and staggered elections and sharply qualifying or completely defeating the cumulative voting provisions of the plan.

On November 12, 1958, plaintiff Kern filed suit as a Class A preferred shareholder in behalf of himself and others similarly situated, naming the railroad and individual members of the board of directors as defendants, seeking the relief hereinbefore referred to. On November 14, 1958 the defendant directors met at a regularly scheduled meeting and adopted a resolution repealing the July 10, 1953 amendment and providing for non-staggered, one year terms of office for the company's directors, as originally fixed in the plan of reorganization. At the same meeting, four directors whose remaining terms exceeded one year and expired after May 1959 resigned and were then re-elected by the remaining nine directors, to serve until May 1959. Thereafter, five more directors whose remaining terms exceeded one year and expired after May 1959 resigned and were also re-elected to new terms until May 1959.

303

On April 6, 1959 plaintiff Lesch, also a Class A preferred shareholder, petitioned and was granted leave to become a party plaintiff and to adopt the allegations and prayers of Kern's complaint, including the prayer for relief. On July 31, 1959, defendants moved for summary decree, supporting their motion by affidavits and suggestions. On October 14, 1959, plaintiffs filed their motion for summary decree, also supported by an affidavit and suggestions. An order was entered March 8, 1960, denying plaintiffs' motion and granting defendants' motion for summary decree and dismissing the suit for want of equity at plaintiffs' costs. It is from that order that plaintiffs appeal.

Defendants contend that inasmuch as the directors' resolution in November 1958 repealed the classes of directors and the staggered election system provided for in the 1953 resolution and provided for a new board as requested in plaintiffs' complaint, there was nothing for the court to declare or enjoin, the 1958 resolution having eliminated whatever justiciable controversy may have existed, thus making the case moot. This suit seeks a declaration of the rights of stockholders. As it stands now, the board of directors may at any time revert to staggered elections, and again Class A stockholders may feel their preferential position prejudiced by their inability to elect directors by cumulative voting. Plaintiffs, if they are right, are entitled to a more stable disposition of the litigation than one which gives them their rights, but reserves to their opponents the power at any time to restore the former status.

█ Even if this case were considered moot, it is within the exception to the rule governing moot decisions because there is a substantial public interest involved. People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769; Kunin v. Forman Realty Corp., 21 Ill. App.2d 221, 224, 157 N.E.2d 785, 787. The railroad company is a large public service corporation. Its

stock is widely held and available for purchase by the public. Its stock is listed on the New York Stock Exchange. There is a wide general interest in the stability of preferred stock, and efforts to eliminate preferences thereof have been the subject of much litigation. The question is whether the power of minority shareholders to cumulate sufficient votes to elect representatives on the board of directors should be diminished or extinguished in contravention of the provisions of a plan of reorganization, a decree of court, and articles of incorporation. For that is the natural end result of classified directorships and staggered elections. See Wolfson v. Avery, 6 Ill.2d 78, 81–82, 126 N.E.2d 701, 704. We conclude that we should consider the merits of the case.

The plan of reorganization relative to rights of Class A preferred stockholders made the following provisions, among others, approved by the Interstate Commerce Commission and the United States District Court:

"Q. Preferred stock having a par value of $40 a share shall be issued to the amount of 383,862–½ shares. . . . This stock shall have the right of cumulative voting in the election of directors."

"X. Upon consummation of the plan the reorganized company shall have a board of directors consisting of 13 members. The term of office of each director shall be one year."

Article IV of the railroad's certificate of incorporation reads in part as follows:

". . . each stockholder, without distinction as to class, shall be entitled to one vote for each share of stock standing in his name on the books of the Company, and in all elec-

305

tions for directors each stockholder shall have the right of cumulative voting. . . .

"So long as any Class A stock shall remain outstanding the consent of the holders of at least two-thirds of the Class A stock then outstanding . . . shall be necessary to amend, alter or repeal any of the provisions of this Certificate of Incorporation, or of the by-laws enacted thereunder, which have reference to, or which are protective of, the designation, rights, preferences, qualifications, limitations, restrictions, voting rights, values and interests of the Class A stock."

Articles VII of the document reads in part as follows:

"The number of directors which the Company shall have shall be thirteen (13). Directors need not be stockholders of the Company or residents of the State of Indiana. The names of the members of the first board of directors, who shall serve until May 15, 1941, a period not exceeding one (1) year, are as follows: . . . ."

Defendants contend that the plan of reorganization, as approved by the Interstate Commerce Commission and the court, with respect to the provision for a board of thirteen directors to serve for one year, was not intended as a restriction extending into infinity. They place great emphasis upon Paragraph X of the plan, before quoted, which provides that *upon consummation of the plan* the company shall have a board of thirteen members, the term of office of each director to be one year, and upon the court's decree of June 16, 1941, finding that the reorganization plan has been fully carried out and approving the consummation thereof

306

by the railroad and its officers. In other words, by that interpretation the protection afforded Class A preferred stockholders was only for that fleeting moment in which the plan was consummated and perhaps for the term of one year thereafter. This is indeed conjuring up a shadow for what was offered as a hope of substance to those security holders who were asked to give their consent to the plan and for whose supposed protection the provision was made. We do not believe that the reorganizers so considered it when it was prepared or that the court had such an interpretation in mind when it was approved.

Defendants further argue that there is no requirement in the certificate of incorporation inflexibly fixing the number of directors at thirteen, each of whom may serve for no more than one year. They contend that the words "to be elected" contained in the provision entitling each shareholder to cast as many votes as shall equal the number of his shares multiplied by the number of directors *to be elected* makes clear that it was intended that the number of directors to be elected would vary. That is drawing a farfetched inference in order to override the language to the contrary in the plan of reorganization which the certificate of incorporation was designed to implement.

■■ When a reorganization plan has been certified by the Interstate Commerce Commission and approved by the court, as has been done in this case, that plan becomes final, is binding upon the debtor and all other interested parties, and must be enforced as written. 11 U. S. C. A., secs. 205, 624; Denver & R. G. W. R. R. v. Goldman Sachs & Co., 212 F.2d 627 (10th Cir. 1954). The plan of reorganization unconditionally fixes the term of each director at one year. There is nothing in the language of the certificate of incorporation which negates this clear and unambiguous language embodied in the Commission order.

307

We have before quoted from Article VII of the certificate containing the language from which defendants' interpretation is derived. It merely states that the names of the members of the first board, who shall serve until May 15, 1941, a period not exceeding one (1) year, are as follows (names follow). Defendants argue from this that the limitation of one year applies only to the first board. That interpretation appears to us to strain severely the plain meaning of the sentence. As if to make certain that the directors' terms of office should not exceed one year, words are added: "a period not exceeding one year." It indicates nothing more than a cautious purpose to keep within the one year limitation.

Defendants say that the make-up of the first board of directors was qualified to protect the interest of the Reconstruction Finance Corporation. Hence, it provided that upon consummation of the plan, the board should consist of thirteen members, five to be chosen by Kenneth D. Steere, five by Carrol M. Shanks (both of whom were reorganization managers) and three by the Reconstruction Finance Corporation. It then provided that as long as the Reconstruction Finance Corporation held not less than one million dollars of certain bonds, the selection of three members of each succeeding board should be subject to its approval. That is consistent with and does not exclude the conclusion that the provision for the election of directors annually was also intended to preserve the right of cumulative voting given to the Class A stockholders. In the period in which this reorganization was developed there was extensive litigation over efforts by common stockholders to eliminate or qualify the preferences of preferred stockholders. It was natural, therefore, that a plan of reorganization providing for cumulative voting should also include a provision for the election of the directors

annually. Such a provision is important to the holders of stock having cumulative voting rights. Otherwise, the right is a snare and a delusion. To defeat the right, if their position were correct, the majority stockholders could always establish enough classes to outvote the holders of the minority stock.

The next point made by defendants relates to a provision of the initial bylaws that the company should have thirteen directors and that "each director shall serve for the term for which he is appointed or elected. . . ." This language, defendants argue, "presupposed that, excepting the first board of directors, the term of office would not necessarily be one year nor that each director would hold office for the same period of time." The routine statement by the draftsman of the bylaws that a director should serve for the term appointed or elected is a slender reed on which to base a denial of an important right granted to the Class A stockholders.

The next bylaw relied upon by defendants to support their theory is a standard authorization giving the board of directors the power "to make, alter, amend and rescind the bylaws of the Company." This authorization must be read within the context of the language in which it appears in Article VII of the certificate of incorporation, qualifying the nature of the power given. That article specifically excepts such powers, rights and privileges as may be reserved to the stockholders by law or by the certificate of incorporation.

Defendants argue that since the certificate of incorporation provides that there be no distinction as to class in matters pertaining to the cumulative election of directors, the Class A preferred shareholders had no rights peculiar to them as a class in such elections, and that to have requested their consent to the resolution would have given them a degree of control over the

affairs of the railroad in excess of and in derogation of the rights of holders of common stock. The answer to this contention is that preferred shareholders are preferred, and that the rights which protect them against dilution of their power to elect directors were given to them by the plan of reorganization and the certificate of incorporation. The provision for notice to and consent of Class A stockholders presents no difficulty so far as the voting rights of common stockholders are concerned. Both have equal rights in cumulative voting. No similar provision for notice and consent is needed for common stockholders.

■ ■ Defendants contend that plaintiffs are estopped from maintaining this suit in any event because Kern participated and acquiesced in activities proceeding from the 1953 amendment and because they failed to make a formal demand upon the directors requesting that the amendment be repealed. The doctrine of estoppel is essentially equitable. Not only Kern, but all Class A stockholders are involved. We must measure the nature of their right to cumulative voting against Kern's alleged inconsistent conduct. The violation of their rights is in contravention of an Interstate Commerce Commission order, the plan of reorganization, the Federal court decree, and the certificate of incorporation. We are of the opinion that estoppel is inapplicable. Durkee v. People ex rel. Askren, 155 Ill. 354, 40 N. E. 626; Automatic Steel Products, Inc. v. Johnston, 31 Del. Ch. 469, 64 A.2d 416; 8 Fletcher, Corporations, sec. 4201, pp. 776–77 (1931). Cf. Westlake Hospital Assn. v. Blix, 13 Ill.2d 183, 148 N.E.2d 471. Moreover, Kern has shown that he persistently argued against the bylaw in question and for a restoration of cumulative voting.

In his affidavit Kern states that shortly after July 1953 he protested to various officials of defendant com-

pany that the staggered system was illegal; that he had numerous conferences with the president of the company with respect thereto in the years 1954 to 1958; that on March 12, 1958 he wrote the secretary-treasurer of defendant company regarding the illegality of the staggered system; that on May 9, 1958 after the annual meeting he advised the directors of defendant company that he would by proper legal action contest the illegality of the staggered system; that on October 21, 1958 he again wrote the secretary-treasurer, advising him that he had retained lawyers to establish his position and that at no time had he acquiesced in the system. He attached a copy of his letter of March 12, 1958 to his affidavit. He received a reply from the secretary-treasurer dated March 26, 1958 stating the position of the company as upholding the right of the board to establish a classified system of directors and to revoke the provision for cumulative voting. On October 21, 1958 he wrote the secretary-treasurer that he had retained lawyers to correct the method of voting; that he was the record owner of at least 4000 shares of Class A stock and had given his authorization to his attorneys to examine the books of the company on his behalf. Thus, many specific requests were shown and were not denied.

■ It is also urged that Kern did not exhaust his nonjudicial remedies. The review we have made of the continuous conferences over the years establishes that Kern did all he could to induce the directors to revoke the amendment in question and that nothing was done until finally the directors were convinced that Kern would bring suit. Throughout that period they maintained they had the right to adopt the amendment. The attitude of the majority directors was such that Kern was justified in instituting his suit without further demand.

311

Defendants' final argument is directed toward the proposition that plaintiffs are not entitled to recover expenses and attorneys' fees. Plaintiffs answer this contention by asserting that notwithstanding the prayer in their complaint for these items, no application was made for them in the trial court, nor is any petition for expenses or fees pending before this court. There is therefore no occasion for this court to consider that matter.

■ In this opinion we have given weight to the provisions of the plan of reorganization. We have done so because the railroad corporation was organized pursuant to and for the consummation of the plan and therefore we felt that the plan had a strong bearing on the proper construction and interpretation of the articles of incorporation and the bylaws. We do not hold that the reorganization plan and agreement is now binding on defendant corporation. The basic document on which plaintiffs' rights must be determined is the certificate of incorporation.

■ Both parties made motions for summary decree. As before stated, the chancellor sustained defendants' motion and denied the motion of plaintiffs. While we have concluded that the chancellor erred in sustaining defendants' motion, it does not follow that he erred in denying plaintiffs' motion. There is not and there cannot be an appeal from the order denying plaintiffs' motion. That is not a final order nor is there any provision for an appeal from such an order. Allensworth v. First Galesburg Nat. Bank & Trust Co., 350 Ill. App. 263, 112 N.E.2d 528. Therefore the cause must be remanded.

The order of the chancellor is reversed and the cause is remanded with directions to deny defendants' motion for summary decree, to require defendants to

answer the complaint, and for such other and further relief as is not inconsistent with the views herein expressed.

Order reversed and cause remanded with directions.

McCORMICK, P. J., concurs.

DEMPSEY, J. dissents.

DEMPSEY, J., dissenting:
If it were not for the question of mootness I would agree with the opinion of my colleagues.

Two days after the plaintiffs filed their case, the defendants modified their procedure for the election of directors. The controversy no longer existed. The case was moot while in the trial court, is moot here, and should be dismissed.

"The general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions involved in the trial court no longer exist, it will dismiss the appeal or writ of error." People v. Redlich, 402 Ill. 270, 83 N.E.2d 736. An appeal concerning a moot question need not be dismissed if there is a compelling reason of public interest which warrants its review. "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers and the likelihood of future recurrence of the question." People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769. I do not see where this case approaches such standards. I do not believe that interpreting this Indiana corporation's plan of reor-

313

ganization, certificate of incorporation and bylaws is of such substantial public interest to justify an Illinois court making this case an exception to the rule; nor do I believe that we should render a judgment just to discourage a possible reversion to the former method of electing directors or to guide potential future litigation. LaSalle Nat. Bank v. City of Chicago, 3 Ill.2d 375, 121 N.E.2d 486.