Paul J. Kern et al., Plaintiffs-Appellees, v. Chicago & Eastern Illinois Railroad Co., an Indiana Corporation, Alfred MacArthur, et al., Defendants-Appellants.

**Gen. No. 48,839.**

First District, Third Division.

November 27, 1963.

P. C. Mullen, Gerald J. O'Rourke, Jr., and Gardner, Carton, Douglas & Chilgren, of Chicago (James A. Velde and John K. Notz, Jr., of counsel), for appellants.

Goldberg and Levin, of Chicago (Mayer Goldberg and Marvin Sacks, of counsel), for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by defendants from a declaratory decree in a class action brought by plaintiffs as two holders of Class A stock of the defendant company, who are suing on behalf of all such stockholders. The suit concerns the validity of a bylaw designed to change and modify the rights of the Class A stockholders with respect to cumulative voting.

The case is before us for the second time, the first opinion appearing in 31 Ill App2d 300, 175 NE2d 408

(1961), where the facts are fully set forth. At that time we reversed a summary decree for defendants and remanded the cause with directions. Thereafter the chancellor held further hearings and granted plaintiffs' motion for judgment on the pleadings and for summary judgments. The chancellor found that the certificate of incorporation of the defendant company required that it have a board of thirteen directors elected for uniform terms of one year each by cumulative voting by the shareholders, and further required the consent of the holders of at least two-thirds of the outstanding Class A stock to amend, alter or repeal the aforesaid provisions. The court decreed that the defendant company be restrained from reducing the number of directors of the corporation or from changing their terms of office from the uniform period of one year, except with the consent of the holders of at least two-thirds of the outstanding Class A stock.

Two days after institution of the instant suit the defendants revoked the offending bylaw and restored the provision for the annual election of all directors. Defendants contend that this made the case moot. We held in our former opinion that the cause was not moot and that plaintiffs were not estopped because of their alleged participation and acquiescence in the illegal system of staggered elections nor because of their failure to make a formal demand. We found that the equities favored the maintenance of this suit in behalf of all Class A stockholders since one plaintiff persistently urged a change in the illegal system of voting for a period of years, and that no further demand in exhaustion of nonjudicial remedies was necessary. On this appeal the defendants still argue at length that the bylaw in question was valid, and at the same time they also argue that the case is moot. Nothing presented to us forms any basis for

470

changing the conclusions reached in our previous opinion. Since the court was divided however on the question of mootness, we have further examined and desire to restate our position on that issue.

The continued alleged power of defendants to change the bylaws and thereby dilute the voting powers of the Class A stock distinguishes this case from cases of ordinary mootness such as arise where an event makes the subject matter of an issue no longer controversial and future litigation on the particular issue impossible or in any event remote.

The origin of the doctrine of mootness is not clear, but an examination of the available authority has helped in finding the true scope of its operation. The word "moot" originally meant "meet" or "a meeting," especially an assembly of people, as a court of adjudicature. Gradually the word came to be used in litigation as an action at law, a plea or an accusation. It did not then have the hypothetical character it later assumed. In England it survives as the discussion of what is now called a "moot" case by students at the Inns of Court (see Oxford English Dictionary, vol 6, p 648 (1933)). The origin of the doctrine seems to have escaped the careful historical and analytical scrutiny of either judges or legal writers. The best explanation of its transformation from reality to the hypothetical rests, we believe, in the development or refinement of the earlier feigned or collusive suit doctrine. In those cases the courts showed an early concern for saving judicial time for real controversies and for protecting the rights of third parties whose interests might be impaired because of prior litigation.

The chronology of the earliest discovered cases in England and in this state bear out the foregoing theory. The following are feigned, fictitious or collusive cases selected for this purpose:

471

In Henkin v. Guerss, 12 East (KB) 247, 104 Eng Rep 97 (1810) it was held that courts of justice were constituted for the purpose of deciding really existing questions of right between the parties and were not bound to answer any impertinent question which persons thought proper to ask in the form of an action on a wager.

In McConnell v. Shields, 2 Ill 582 (1839) the court thought that a feigned case was presented, and required proof at the next term that the case was not fictitious.

Spraggins v. Houghton, 3 Ill 211 (1840) was a qui tam proceeding to collect a fine from a judge of election for allowing an alien to vote in the 1838 election for state and county officials. The court continued the case until further records and briefs were filed because in the form presented it was simply a fictitious suit to decide whether an alien could vote in Illinois.

People ex rel. Roberts v. Leland, 40 Ill 118 (1865) was a writ of mandamus to compel the Clerk of the Superior Court of Cook County to remove the record of a case to the Supreme Court, despite the defendant's failure to furnish a revenue stamp as required by the federal act. The court held the suit was fictitious as no notice was given the plaintiff in the suit of record and it was presumably an attempt with the clerk's blessing to get a construction of the federal revenue act.

In Washburne v. People ex rel. King, 50 Ill App 93 (1892) an appeal from the award of a writ of mandamus to the Mayor of Chicago to issue a liquor license was dismissed as fictitious. The court found that a liquor license had already been granted and suspected that the writ was not prosecuted for any direct result, but for use that might be made of the judgment upon subsequent application for licenses.

In Hoskins v. Mann, 143 Ill App 49 (1908) John Henton, after retaining a life interest, conveyed certain farmland to his granddaughters. Henton then rented the property to John Hoskins. After Henton's death, Hoskins brought a bill of interpleader to determine who was entitled to the rent prior to Henton's death. The bill was dismissed as collusive, since the suit had been instituted by Hoskins at the insistence and coercion of the father of one of the granddaughters who had agreed to indemnify the plaintiff for attorneys' fees, and no demand for payment of the rent claim had been made by either Henton's widow or the three grandchildren.

The foregoing cases are the progenitors of the mootness doctrine. In all of them it was the lack of a genuine controversy between the parties that was stressed.

The contemporary application of the doctrine as a matter of policy should be considered in the light of the recent adoption of procedures designed to resolve disputes by means of declaratory judgment proceedings, even though no present issue demands a judgment or decree other than one settling the legal questions involved. The question of when an actual controversy exists for purposes of declaratory judgment proceedings is analogous to the problem of determining when a controversy is or is not moot. An examination of the case of Elward v. Peabody Coal Co., 9 Ill App2d 234, 132 NE2d 549, illustrates this point. There, a shareholder sued the corporation and seven directors to set aside a stock option granted one director, because the option agreement violated the statutory provision requiring the option purchase price to be greater than the par value. *Even though the director had not yet exercised or declared his intention to exercise his option,* the court found that an actual controversy existed, since at the time of the trial the

market value of the stock was double the option price and the defendant corporation was contending for the legality of the option. The court was willing to draw an inference from the facts that certain future events would occur which would make the controversy real and not moot. In the instant case, it is just as reasonable to believe that the board of defendants of the defendant company will again adopt a bylaw diluting the voting rights of Class A shareholders. The inference is even stronger when the past action of the corporation and the zeal with which it persists in asserting its right to change the bylaws are taken into account.

The federal courts have refused to apply the doctrine of mootness in cases involving short term provisional orders of federal regulatory agencies relating to rates and regulations. In such cases the litigation between the government and the parties often extends beyond the period of the short term orders allowing temporary rates and laying down temporary regulations; that is, these provisional orders often expire before final review is obtainable by either side. Nevertheless, it is held that such a case does not become moot after expiration of the fixed period because of the reasonable possibility that the order will be renewed. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 US 498 (1911). That was an action to enjoin an order requiring the plaintiff to cease granting preferences to a shipper for a period of two years, although the order had expired. The United States Supreme Court held that it had authority to adjudicate the controversy, despite the expiration of the specific order on which the issue was joined, saying:

> "The questions involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at

bar) and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review, and at one time the Government and at another time the carriers have their rights determined by the Commission without a chance of redress." P 515.

The same principle has been applied in cases involving rate orders, Southern Pacific Co. v. Interstate Commerce Commission, 219 US 433 (1911); processing quotas, Gay Union Corp. v. Wallace, 112 F2d 192 (DC Cir, 1940); agricultural marketing orders, Yarnell v. Hillsborough Packing Co., 70 F2d 435 (5th Cir, 1934); and military exclusion orders, Ebel v. Drum, 55 F Supp 186 (Mass, 1944).

 The most comprehensive study of this aspect of mootness we have been able to find is an article entitled "Federal Jurisdiction to Decide Moot cases," 94 U of Pa Law Review 125 (1945) (author Sidney Diamond, then Special Assistant to the Attorney General of the United States). This reveals the broad boundaries within which the court may take a case, even though the judgment will not determine property rights or assess damages. The author sets forth what appear to be sound and reasonable tests to apply where the issue of mootness is raised. These are— the defendant's continued assertion of the legality of the discontinued acts; the defendant's discontinuance of the acts before or after the institution of suit; the defendant's motive or intent in discontinuing the acts; and the public interest involved in having the particular issue determined. The foregoing tests are all applicable to the pattern of the case before us, as an examination seriatim will reveal.

With respect to the continued assertion of legality, nearly half of a 75-page brief is devoted by defendants in the instant case to arguing the validity of the bylaw they have repealed, and a substantial portion

of their oral argument was also devoted to the same proposition. They have not only argued its legality, but also its *desirability*.

The second test of mootness, that the acts complained of were not discontinued until after litigation was threatened or commenced, is also applicable. The instant suit was instituted two days before repeal of the bylaw, and defendants were aware that plaintiff Kern had left the date of institution of his suit to his Chicago attorney. Although defendants claim they were unaware of the institution of the suit at the time of the repeal of the bylaw, the reasonable inference from these facts is that defendants would not have acted without the pressure applied by plaintiff Kern.

The motive or intent of the defendant in discontinuing the acts sought to be enjoined is the third condition set out in the article. The only reasonable conclusion from the facts before us is that it is the defendant railroad's intent at some opportune time to repeal the bylaw.

■ The factor of the public interest involved is a fourth item to be considered in determining whether the court will hear the case. Illinois courts recognize that there is a public interest exception to the doctrine of mootness. People ex rel. Wallace v. Labrenz, 411 Ill 618, 104 NE2d 769. The Chicago and Eastern Illinois Railroad is a large public service corporation. Its stock is listed on the New York Stock Exchange. There is a wide general interest in the stability of preferred stock, and efforts to eliminate preferences have been the subject of much litigation. Cf. Bowman v. Armour & Co., 17 Ill2d 43, 160 NE2d 753. The interest of preferred shareholders generally is sufficient, in our opinion, to establish the public interest in this case, even though the particular stock may not have a large general distribution.

■■ It is our conclusion that mootness is not a defense of merit which may be raised by defendants

to defeat the immediate litigation. Rather, mootness is a doctrine which the court imposes for its own protection, and it will not be applied where it is apparent that the controversy is a genuine one concerning valuable rights and where the party defending maintains that it still has the power to annul those rights and to recreate the condition as it existed at the time the litigation was commenced. The suit is not moot, and the controversy is a proper one for declaring the rights of the plaintiffs and for the granting of equitable relief.

■ The other legal conclusions of this court in its first opinion constitute the law of the case and will not again be considered. Seaburg v. Williams, 23 Ill App2d 25, 161 NE2d 576; Crozier v. Freeman Coal Min. Co., 363 Ill 362, 2 NE2d 293; People ex rel. Kastning v. Militzer, 301 Ill 284, 133 NE 761. Certain factual questions arose after remandment, however, and will now be considered.

Plaintiffs filed two motions in the trial court. The first was for judgment on the pleadings, in accordance with Section 45(5) of the Civil Practice Act (Ill Rev Stats, c 110, § 45(5) (1961)), and the second, a renewal of plaintiffs' motion for summary judgment filed in the proceedings, which resulted in the first appeal. Thereafter, defendants filed two affidavits of significance in opposition to plaintiffs' motions. The first was an affidavit of Clair M. Roddewig, former president of defendant railroad company. It confirmed that Roddewig had had conferences with Kern, one of the plaintiffs, as Kern's affidavit stated. Roddewig denied that Kern had ever told him he considered the disputed method of electing members of the board of directors illegal. Defendants argue that in this appeal their answer and affidavits must be given controlling weight and that they make a case of estoppel in the maintenance of this suit.

477

■ ■ It is true that an affidavit in support of a motion for summary judgment will be strictly construed and that it must leave no question as to the movant's right to judgment, whereas the opposing party's affidavit will be construed liberally. Tansey v. Robinson, 24 Ill App2d 227, 164 NE2d 272 and the authorities therein collected. If the allegations made by Kern respecting conversations between Roddewig and himself (which were controverted by Roddewig's affidavit) were the sole evidence of Kern's protests concerning the illegality of the staggered system of elections and his efforts for restoration of cumulative voting, perhaps there would have been an issue of fact requiring resolution by trial. There were however as noted in our previous opinion, other specific requests by Kern to correct the method of electing directors (31 Ill App2d 300, 311) and these still remain undenied.

■ The affidavit of Frank F. Vesper, general solicitor of the defendant railroad, was filed, setting forth certain sections of Indiana law relating to railroads. In our opinion the trial court correctly ruled that these sections are permissive rather than mandatory, and that they did not raise any questions of law or fact. Even if we held that the Indiana statutes were mandatory rather than permissive, a conflict exists between Sections 55–206 and 55–208 of the Indiana Statutes (Burn's Statutes Annotated (1955)). Section 55–206 states:

"The directors shall hold their office for one (1) year and until others are elected in their places."

Section 55–208 states:

"Classification of directors. It shall be lawful for the board of directors of any railway company whose road passes through this state into adjoining states, by lot or otherwise, to so classify

478

the members thereof, that one-fourth (¼) (as near as may be) shall terminate their official terms as directors at the first annual election thereafter; and one-fourth (¼) at each subsequent election; and after being thus classified, the stock and bondholders shall elect only the number of the board of directors necessary to fill the vacancies created by the expiration of the period of service fixed as aforesaid."

The defendant railroad argues that a reasonable reading of the words "each subsequent election" appearing after the words "first annual election," is that each subsequent election is an annual one and therefore a reasonable construction of the two sections would be that all directors are elected for one year, except where there are provisions for the staggered election of directors under Section 55–208, in which case there is an implied four-year term for each director. This is reading into the statute a provision which is not there. In any event, it appears clear to us that the provision is not mandatory and the defendant railroad company is not required to violate its commitments to its Class A stockholders.

The decree of the trial court is affirmed.

Decree affirmed.

McCORMICK, J., concurs.

DEMPSEY, J., specially concurring:
An important question in the previous appeal, bearing on the issue of mootness, was whether the controversy between the parties over the method of electing directors was permanently ended. A corollary question was whether the defendants had modified the method in good faith or whether it was done in an attempt to weaken the plaintiffs' suit. The defendants

asserted that they made the change without knowing that the suit had been started two days before. Although they defended the validity of the bylaw under which the directors had been elected, they argued that the case was moot because the bylaw had been amended. I assumed that the amended bylaw would stand and that the controversy was ended. I stated that I did not "believe that we should render a judgment just to discourage a possible reversion to the former method of electing directors."

I am now disturbed by the persistence of the defendants in insisting that the former bylaw was proper. This court was unanimous in holding that it was invalid, but the issue has been raised again and is reargued with unrelenting determination. The tenacity of the defendants on this subject casts doubt on their former good faith and their future intention; there seems to be more than just a possibility that the defendants may revert to the former method of electing directors if a time to do so becomes propitious.

I also said in the dissent that in my opinion the case was not of such public interest as to justify an exception to the criteria applicable to cases which are otherwise moot. I am still inclined to this view. However, because of the doubt created by the defendants themselves, I must conclude that the substantive issue between the parties is not interred. This consideration outweighs my reservation as to the lack of public interest. I, therefore, concur in the opinion of my colleagues.